# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00498-CV

**Ancira Enterprises, Incorporated and Ancira GMC Trucks and
Motor Homes, Inc., Appellants**

**v.**

**Frances Fischer and Law Office of Rique D. Bobbitt,[1] Appellees**

### FROM THE DISTRICT COURT OF BELL COUNTY, 169TH JUDICIAL DISTRICT
### NO. 182,220-C, HONORABLE GORDON G. ADAMS, JUDGE PRESIDING

## O P I N I O N

This is an appeal from a judgment on a jury verdict finding Ancira Enterprises,
Incorporated (Ancira Enterprises) and Ancira GMC Trucks and Motor Homes, Inc. (Ancira GMC)
liable for retaliatory discharge in violation of the Texas Commission on Human Rights Act
(TCHRA). *See* Tex. Lab. Code Ann. § 21.001-.262 (West 1996 & Supp. 2004-05). The judgment
further held Ancira GMC and Ancira Enterprises jointly and severally liable to pay appellee, Frances
Fischer, back pay, compensatory damages, punitive damages, attorney's fees, and prejudgment and
postjudgment interest. *See id*. §§ 21.2585, .259 (West 1996). On appeal, Ancira Enterprises and
Ancira GMC argue that Fischer failed to prove that either entity met the statutory definition of

---

[1] The Law Office of Rique Bobbitt represented Frances Fischer at trial but subsequently
withdrew. It appears in this appeal as an assignee of an interest in Fischer's cause of action.

"employer" under the TCHRA and that the evidence was legally insufficient to support the award of punitive damages. Finding sufficient evidence to support both TCHRA liability and punitive damages, we affirm the judgment against Ancira GMC. However, because Fischer failed to adduce legally sufficient evidence that Ancira Enterprises is an employer subject to the TCHRA, we reverse and render a take-nothing judgment in its favor.

**BACKGROUND**

Ancira Enterprises and Ancira GMC are among several entities under the common ownership of Ernesto Ancira that, collectively, have over 700 employees. Ancira GMC is an automobile dealership. Ancira Enterprises provides certain administrative services, including human resources services, for ten Ancira dealerships including Ancira GMC.

Beginning in 1997, Fischer worked at the Temple location of Ancira GMC. She was employed in the dealership's service department as a "technician flagger," a job that entailed "flagging" on repair orders the time that Ancira GMC's technicians worked on each job and either sending the order back to the repair dispatcher or preliminarily billing the order. The evidence at trial was disputed concerning the subsequent events from which this appeal arose.

Fischer testified that, beginning in 1997, she experienced a hostile work environment because of racial slurs, sexual advances, and sexually explicit comments made by other employees and managers. In February and April 1999, Fischer notified management that certain technicians in the service department were placing their service number on repair orders for work they did not perform, in effect stealing commission from other employees. Soon after reporting this conduct, Fischer testified, she began to be treated worse by management, including getting yelled at and,

2

unlike other employees, being prohibited from listening to radio stations of her choice or lighting scented candles to eliminate offensive odors in the service area. Fischer also recounted that, for a period of time, she and another employee lost their right to take breaks.[2] Fischer also claimed that other employees often made sexually suggestive comments to Fischer; made comments regarding the race of men that she and her daughter dated; and defaced, in an obscene and racist manner, pictures which were displayed in her office. Fischer repeatedly complained to management, including submitting a written complaint dated September 27, 1999. In response, Fischer recalled, management sometimes attempted to correct the situation, but often did nothing. In contrast, witnesses for appellants testified that Fischer had difficulty getting along with co-workers[3] and persistently complained to management regarding a wide range of perceived slights and wrongs.

In October 1999, Valerie Tackett, human resources director for Ancira Enterprises, began an investigation into the potential misuse of Ancira's toll-free telephone number. On November 1, 1999, after the investigation was complete, Fischer and co-worker Al Trevino were suspended without pay for five days.[4] The next day, November 2, Fischer and Trevino traveled to Austin and met with a representative of the Texas Commission on Human Rights (TCHR). Trevino filed a written complaint with TCHR that day. Although Fischer verbally complained to the TCHR

---

[2] Appellants argued that the policy regarding breaks was applied uniformly to all workers in certain payroll categories. However, there was conflicting evidence on this issue and whether it was enacted in order to punish Fischer and another employee.

[3] A source of contention was Fischer's practice of writing letters to co-workers informing them of ways in which they had offended Fischer.

[4] At trial, there was evidence that other employees who were found to have abused the toll-free number more than Fischer or Trevino received less severe discipline, or none at all.

3

representative on November 2, she did not file a written complaint until November 10. The TCHR was required by statute to notify the employer of these written complaints within ten days. *See* Tex. Lab. Code Ann. § 21.201 (West 1996). Trevino and Fischer were both fired on November 12, 1999, exactly the tenth day after Trevino had filed his complaint. Appellants argued that Fischer was fired because, while she was suspended, an excessive amount of unfinished work was found "hidden" in her desk. Fischer testified that no one had ever complained that she had an excess backlog of back work orders, and that when she left on November 1, her work was caught up to her satisfaction.[5]

On August 16, 2000, Fischer filed suit against Ancira Enterprises, alleging discrimination and retaliation under the TCHRA and negligent and intentional infliction of emotional distress. On January 17, 2003, Fischer amended her petition to name Ancira GMC as a defendant. The case was tried to a jury, who found that Fischer was "employed by" both Ancira Enterprises and Ancira GMC, and that both entities were liable for retaliating against Fischer in violation of the TCHRA, but that Fischer had not been sexually harassed. Fischer was awarded back pay, compensatory damages in the amount of $30,000, punitive damages in the amount of $75,000, attorney's fees, and prejudgment and postjudgment interest. This appeal ensued.

---

[5] A performance review dated March 30, 1999 reflected that Fischer's "performance of duties" and "knowledge of duties" was "excellent"; that she had "good" punctuality, and a "very good" attitude. The review noted that Fischer was on the safety committee and "works well with other employees and strives to be a 'Team Player.'" It recommended that she continue with her current position, but "be available for consideration to a position of more responsibility and advancement within the company."

**DISCUSSION**

Ancira Enterprises and Ancira GMC present two narrow issues on appeal. In the first, they argue that Fischer failed to prove that either entity met the statutory definition of "employer" against whom Fischer could assert a claim under the TCHRA. In their second issue, Ancira Enterprises and Ancira GMC contend that there was legally insufficient evidence of malice necessary to support liability for punitive damages.

**Standard of review**

In reviewing the legal sufficiency of the evidence, we view the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, No. 02-1012, 2005 Tex. LEXIS 436, at *1-2 (Tex. June 10, 2005). There is legally insufficient evidence or "no evidence" of a vital fact when (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997); *Patlyek v. Brittain*, 149 S.W.3d 781, 785 (Tex. App.—Austin 2004, pet. denied). More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Havner*, 953 S.W.2d at 711 (quoting *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995)). If the evidence is so weak as to do no more than create a mere surmise or suspicion of its existence, its legal effect is that it is no evidence. *Haynes & Boone v. Bowser Bouldin, Ltd.*, 896 S.W.2d 179, 183 (Tex. 1995).

In reviewing a factual insufficiency point, we consider, weigh, and examine all the evidence presented at trial. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). We set aside a finding for factual insufficiency only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

In reviewing a claim that evidence is legally insufficient under the clear and convincing standard applicable to the punitive damages award in this case, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *Diamond Shamrock Ref. Co. v. Hall*, No. 02-0566, 2005 Tex. LEXIS 49, at *14-15 (Tex. 2005) (quoting *Southwestern Bell Tel. Co. v. Garza*, No. 01-1142, 2004 Tex. LEXIS 1424, at *2 (Tex. 2004)); *see In re J.F.C.*, 96 S.W.3d 256, 264-68 (Tex. 2002); *see also City of Keller*, 2005 Tex. LEXIS 436, at *34 n.77. We assume that the fact-finder resolved disputed facts in favor of its finding if a reasonable fact-finder could do so, and disregard all evidence that a reasonable fact-finder could have disbelieved or found to have been incredible. *See Hall*, 2005 Tex. LEXIS 49, at *15 (*quoting In re J.F.C.*, 96 S.W.3d at 266). The evidence is legally insufficient if no reasonable fact-finder could form a firm belief or conviction that the employer(s) acted with malice. *See id*.

**Employer status under the TCHRA**

Under the TCHRA, an employee may sue an "employer" who retaliates or discriminates against him/her for opposing a discriminatory practice; making or filing a charge; filing a complaint; or testifying, assisting, or participating in any manner in an investigation, proceeding,

6

or hearing.  *See* Tex. Lab. Code Ann. § 21.055 (West 1996).  In creating this remedy, the legislature intended to correlate state law with federal law in employment discrimination cases.  *See Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003); *see also* Tex. Lab. Code Ann. § 21.001; *Little v. Texas Dep't of Crim. Justice*, 148 S.W.3d 374, 382 (Tex. 2004).

For an entity to qualify as an "employer" subject to liability under the TCHRA, (1) it must fall within the statutory definition of employer; and (2) there must be an employment relationship between the parties.  *Sterkenburg v. Bittner*, 1999 Tex. App. LEXIS 2577, at *4 (Tex. App.—Austin 1999, no pet.) (not designated for publication); *Guerrero v. Refugio County*, 946 S.W.2d 558, 566 (Tex. App.—Corpus Christi 1997, no writ) (*citing Deal v. State Farm County Mut. Ins. Co. of Tex.*, 5 F.3d 117, 118 n. 2 (5th Cir. 1993)).  The statutory definition of "employer," includes "a person who is engaged in an industry affecting commerce and who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year."  Tex. Lab. Code Ann. § 21.002(A).  The "current year" refers to the year of the alleged discriminatory or retaliatory act, not the date of the judgment.  *Vance v. Union Planters Corp.*, 279 F.3d 295, 297 (5th Cir. 2002).

Accordingly, Fischer had the burden of proof to present evidence that both Ancira Enterprises and Ancira GMC:  (1) had an employment relationship with Fischer; (2) were engaged in an industry affecting commerce; and (3) had fifteen or more employees, (a) for each working day in each of twenty or more calendar weeks, (b) in calendar years 1998 or 1999.[6]  *See* Tex. Lab. Code

---

[6] Appellee argues that Ancira Enterprises and Ancira GMC waived the issue because they did not file a verified plea asserting they lacked legal capacity to be sued, or affirmative defenses that they were not subject to the statute or had immunity from liability.  We disagree.  As plaintiff, Fischer had the burden of proving the mandatory statutory requirements necessary to recover on her retaliation claim.  *See Hubenak v. San Jacinto Gas Transmission Co.*, 141 S.W.3d 172, 182-83 (Tex.

Ann. § 21.002; *see also Walters v. Metropolitan Educ. Enters., Inc.*, 519 U.S. 202, 212 (1997) ("the ultimate touchstone under [the federal statute] is whether an employer has employment relationships with 15 or more individuals for each working day in 20 or more weeks during the year in question."); *Greenlees v. Eidenmuller Enters., Inc.*, 32 F.3d 197, 198 (5th Cir. 1994); *Davis v. West Cmty. Hosp.*, 786 F.2d 677, 681-82 (5th Cir. 1986) (analyzing evidence of number of employees pursuant to federal discrimination statute).

At trial, Fischer sought to hold both Ancira Enterprises and Ancira GMC liable under the retaliation statute. *See* Tex. Lab. Code Ann. § 21.055. Over objection, the district court submitted a jury issue inquiring only whether Fischer was "employed by"— *i.e.*, had an employment relationship with—Ancira GMC, Ancira Enterprises, or both. The jury found in the affirmative as to both entities.[7] The jury was not asked to make findings regarding the other elements necessary to impose liability for retaliation under the TCHRA, nor was it instructed or provided definitions regarding those elements. Although appellants did not object to the form of this submission on these grounds, they did object to the submission of a TCHRA retaliation issue altogether on the basis that Fischer had failed to present evidence that either Ancira GMC or Ancira Enterprises had the minimum fifteen employees for the requisite time period; they also raised this complaint in a directed verdict motion and motion for j.n.o.v.[8] Against this backdrop, we construe Appellants' first issue

2004).

[7] Appellants do not challenge this finding on appeal. At trial, Appellants admitted that Fischer had an employment relationship with Ancira GMC but disputed the existence of such a relationship with Ancira Enterprises.

[8] Both at trial and on appeal, Ancira Enterprises and Ancira GMC have characterized this issue as one of "subject matter jurisdiction." Under federal employment discrimination law, the failure to meet the statutory definition of "employer" deprives federal courts of subject-matter

as a challenge to the legal sufficiency of the evidence that would support the district court's deemed findings that both Ancira GMC and Ancira Enterprises had fifteen or more employees for each working day in each of twenty or more calendar weeks in 1998 or 1999. *See* Tex. R. Civ. P. 279; *In re J.F.C.*, 96 S.W.3d 256, 262-64 (Tex. 2002). We also must consider whether there is factually sufficient evidence to support the deemed finding. Tex. R. Civ. P. 279; *J.F.C.*, 96 S.W.3d at 262-64. We accordingly examine the record to determine whether there is legally and factually sufficient evidence that Ancira GMC and Ancira Enterprises each had fifteen or more employees for each working day for twenty or more calendar weeks in 1998 or 1999.

### Ancira GMC

At trial, Valerie Tackett, human resources director for Ancira Enterprises, testified that Ancira GMC "has between 30 and 35 employees; possibly 36." Tackett's testimony establishes only that it is possible that Ancira GMC could have met the TCHRA number-of-employees threshold

---

jurisdiction. *See Greenlees v. Eidenmuller Enters., Inc.*, 32 F.3d 197, 198 (5th Cir. 1994). However, federal courts are courts of limited jurisdiction, whereas Texas' state courts are courts of general jurisdiction. *See Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex. 2000). Especially in recent years, the trend among Texas courts has been to view state statutory prerequisites for claims as mandatory but not jurisdictional. *See, e.g.*, *Hubenak v. San Jacinto Gas Transmission Co.*, 141 S.W.3d 172, 182-83 (Tex. 2004); *Dubai*, 12 S.W.3d at 76-77. We conclude, in light of these authorities, the issue of whether Ancira GMC or Ancira Enterprises had the requisite number of employees for the required time period would not implicate the jurisdiction of the district court. *See* Tex. Lab. Code Ann. § 21.002.

While they have mislabeled their argument, the substance of Appellants' complaint is that the evidence is legally insufficient that either Ancira GMC or Ancira Enterprises met the statutory employee number threshold for the time period required to impose TCHRA liability. Appellants preserved this complaint by raising it in their directed verdict motion, objections to the submission of a TCHRA retaliation liability issue, and a motion for j.n.o.v. *See* Tex. R. App. P. 33.1; Tex. R. Civ. P. 279; *Edward D. Jones & Co. v. Fletcher*, 975 S.W.2d 539, 543 (Tex. 1998).

9

at the time of trial. The TCHRA requires much more: at least fifteen of the employees must have been employed by Ancira GMC for each working day in each of twenty or more calendar weeks during the calendar year of the retaliation or the preceding year. *See* Tex. Lab. Code Ann. § 21.002; *see also Meritor Auto., Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 90 (Tex. 2001) ("When possible, each sentence, phrase, clause and word is given effect, so that the statute makes sense as a cohesive whole."); *City of Austin v. Hyde Park Baptist Church*, 152 S.W.3d 162, 166 (Tex. App.—Austin 2004, no pet.). Tackett was never asked whether Ancira GMC had employed these employees for the requisite time period during the relevant time period, nor are there payroll documents in evidence showing that at least fifteen employees were on either entity's payroll for each working day of twenty weeks in 1998 or 1999.

However, we have gleaned, from testimony and exhibits, evidence that at least fifteen individuals had an employment relationship with Ancira GMC for the requisite time period during 1999. Because there is no contrary evidence, it is reasonable to infer that each was employed continuously (each working day) during the interim between the earliest and latest dates each was identified as having been employed by Ancira GMC. *See Davis*, 786 F.2d at 681-82.

- Fischer, who worked at Ancira GMC's Temple location from 1997 through November 1999.[9]

- Neil Mentzer, whose Ancira GMC employment dates are listed on a human resources document as September 1994 until August 1999.

- John Hearn, who witnesses testified began his employment at Ancira GMC in October 1995 and remained employed there at the time of trial in April 2003.

---

[9] Although Fischer testified that she was employed by Ancira Enterprises, Ancira GMC argued that it was her employer, and the jury resolved the disputed evidence by finding that both entities were Fischer's employer. Appellants do not challenge this finding on appeal.

- Albert de la Garza, who testified that he was the general manager at Ancira GMC in May 1993 and was still the manager in April 2003.

- Lonnie Clark, who was a technician at Ancira GMC from at least January 1997 until November 1999.

- Andy Henry, who was mentioned in an October 1999 letter from Fischer to Tackett, written on Ancira GMC letterhead. In that letter, Fischer stated that she attended a May 1999 meeting with Andy Henry. Also, Henry conducted Fischer's performance review in August 1999, and signed a corrective action counseling record for another employee in November 1999. He was a service manager at Ancira GMC, working under de la Garza.

- Trish Garrett, who testified that she was the office manager at Ancira GMC in April 2003 and had been there since at least June 1998.

- Mike Medrano, who testified that he was employed by Ancira GMC in April 2003. An exhibit demonstrates that he was also there in May 1999.

- Renee Horn, who testified that she was an employee of Ancira GMC in April 2003 and began working there sometime before January 1998.[10]

- Jennifer Lawrence—Fischer complained about her in early 1997, and a July 2, 1999, letter addressed to Lawrence reveals that she was still employed by Ancira GMC at that time.

- Ryan Hope, who signed documents related to the investigation of Fischer's complaint on October 28, 1999; Hope's 90-day probation period evaluation at Ancira GMC was signed by Andy Henry on August 4, 1999, and Fischer mentioned Hope in a letter dated May 2000. Thus, Hope was employed by Ancira GMC from at least May 1999 through sometime in 2000.

- Lanny Dugan—Fischer wrote a letter to co-worker Dugan in October 1997 complaining of his behavior; he is also mentioned in a letter exhibit dated July 1999.

---

[10] As part of Tackett's investigation of Fischer's complaint, Horn described a situation with David Yargo. Yargo was employed at Ancira GMC from 1997 through January 1998.

- Bubba Orr—Fischer testified that, in February 1999, she noticed that he had allegedly altered a repair order. An exhibit shows that Orr was terminated from Ancira GMC in September 1999.

- Doug Dangerfield—the record reflects that he signed paperwork on behalf of Ancira GMC in June 1998 and was terminated in July 1999; and

- Al Trevino, who testified that he worked at Ancira GMC from November 1995 until November 1999.[11]

The foregoing is legally and factually sufficient evidence that Ancira GMC met the TCHRA's definition of "employer." Moreover, on November 4, 1999, in Tackett's formal response to Fischer's internal complaints, Tackett detailed the results of her investigation and named over fifteen then-current employees with knowledge of the circumstances surrounding Fischer's complaint. The record also contains an Ancira GMC phone list with names and phone numbers of thirty-two employees, a number that is roughly consistent with Tackett's testimony that there were approximately thirty-five employees at the Temple location of Ancira GMC. John Hearn, the Ancira GMC manager at the time of trial, referred in testimony to at least eighteen different positions at the Temple location, including: (1) store manager; (2) parts manager; (3) service manager; (4) office manager; (5) finance manager; (6) flagger; (7) warranty clerk; (8) service writer; (9) dispatcher; (10) air conditioning technician; (11) cashier; (12) parts people; (13) shop foreman; (14) service director; (15) sales manager; (16) service secretary; (17) salesman; and (18) assistant sales manager. Although this evidence, standing alone, would be insufficient to establish that Ancira GMC is an

---

[11] Although Trevino originally testified that he was employed by Ancira Enterprises, after reviewing his complaint to the TCHR, and his application for employment, he decided that he was employed by Ancira GMC. Both documents list Ancira GMC as his employer.

"employer" subject to the TCHRA, we hold that when combined with the evidence regarding specific individual employees, reasonable jurors could conclude from this record that Ancira GMC employed fifteen or more employees during the required time period. *See City of Keller*, 2005 Tex. LEXIS 436, at *1-2. We overrule Ancira GMC's first issue.

### Ancira Enterprises

At trial, Tackett testified that Ancira Enterprises "consists of approximately twelve employees," and, since 1992, has never had more than fourteen employees. Only one witness, Ashleigh Hall Qualey, testified unequivocally that she worked for Ancira Enterprises.[12] On this record, there is no more than a scintilla of evidence that Ancira Enterprises had fifteen or more employees for the required time period in 1998 or 1999.

Appellees urge that Ancira Enterprises may nonetheless be held liable under the TCHRA because it and Ancira GMC constituted a "single employer" whose employees should be aggregated for purposes of the TCHRA thresholds. The record was unclear and contained conflicting evidence regarding which entity employed certain employees. However, the single employer theory, which is akin to alter ego or piercing the corporate veil, was neither pled at trial nor submitted to the jury. We conclude that it was waived. *See George Grubbs Enters. v. Bien*, 900 S.W.2d 337, 339 (Tex. 1995) ("Disregarding the corporate structure . . . demands a fact-specific analysis of each case and therefore demands jury instructions that advise the jury concerning all the factors bearing on their decision."); *Castleberry v. Branscum*, 721 S.W.2d 270, 277 (Tex. 1986).

---

[12] However, a section of her termination paperwork, identifying "dealership," states "Ancira Motorhomes."

Having found legally insufficient evidence to support a deemed finding that Ancira Enterprises had at least fifteen employees for the required time period during 1998 or 1999, we must reverse and render a take-nothing judgment in its favor. Because legally and factually sufficient evidence supports the deemed finding with regard to Ancira GMC, however, we proceed to consider Ancira GMC's second issue concerning punitive damages.

**Punitive damages**

In Ancira GMC's second issue, it contends that the evidence is legally insufficient to support the jury's award of punitive damages. Other than contesting that it is subject to TCHRA liability, Ancira GMC does not challenge the jury's finding that Fischer's "opposition to a discriminatory practice, making or filing a charge of discrimination, sexual harassment, filing a complaint, assisting, or participating in any manner in a discrimination or sexual harassment investigation or proceeding" under the TCHRA was a "motivating factor" in "Employer's decision to discharge Frances Fischer."[13] This finding was the predicate for Fischer's punitive damages liability issue. In that submission, the jury was asked whether it found, by clear and convincing evidence, that "Employer engaged in the discriminatory practice" made the basis of its TCHRA liability finding "with malice or with reckless indifference to the right of Frances Fischer to be free from such practices."[14] *See* Tex. Lab. Code Ann. § 21.2585. The jury answered in the affirmative, and awarded $75,000. Ancira GMC's sole complaint regarding punitive damages is that there is

[13] Nor does it dispute the jury's award of back pay, compensatory damages, or attorney's fees predicated on the liability finding against it. *See* Tex. Lab. Code Ann. §§ 21.2585, .259 (West 1996).

[14] No definition of "reckless indifference" was submitted to the jury.

14

legally insufficient evidence of malice or reckless indifference to support the jury's punitive damages liability finding.

When reviewing the legal sufficiency of evidence supporting a jury finding, our starting point is generally the charge and instructions actually submitted to the jury. *See Garza*, 2004 Tex. LEXIS 1424, at *28; *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000); *Patlyek*, 149 S.W.3d at 785 n.1. Here, the jury charge defined "malice" as:

(a)  a specific intent by Employer to cause substantial injury to Frances Fischer; or

(b)  an act or omission:

  (I)  which, when viewed objectively from the standpoint of Employer at the time of its occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

  (ii)  of which Employer had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of others.

The jury was also instructed that "in order to find that Employer acted with malice you must find that an employee was employed in a managerial capacity and was acting in the scope of employment, or the employer or a manager of the employer's ratified or approved the act."[15]

The definition of "malice" submitted to the jury tracks the version of chapter 41 of the civil practice and remedies code in effect at the time of trial. *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.001 (West 1997). The first prong is specific intent; the second is gross negligence. *See*

---

[15] Appellants objected to this instruction at the charge conference, and requested an instruction requiring the names of specific individuals, but the issue was not raised on appeal.

*Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 23 (Tex. 1994). Ancira GMC concedes that while a stricter definition of malice applies in a retaliation suit, the chapter 41 definition nonetheless governs our legal sufficiency review because Ancira GMC did not object to its submission. *See Garza*, 2004 Tex. LEXIS 1424, at *28; *Bradford v. Vento*, 48 S.W.3d 749,754 (Tex. 2001); *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 71 (Tex. 2000). We accordingly consider whether there is legally sufficient evidence of malice as that term is defined in the jury charge. As previously discussed, we conduct our legal sufficiency review through the "clear and convincing evidence" prism. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 41.001-.003 (West 1997 & Supp. 2004-05); *see also Garza*, 2004 Tex. LEXIS 1424, at *1-2.

Under our standard of review and the jury charge, the evidence is legally sufficient to support punitive damages liability if, when considering the entire record, evidence exists that is capable of producing a firm belief or conviction that Ancira GMC—specifically, a managerial employee who committed, ratified or approved the act while acting in the scope of employment—retaliated against Fischer for her protected activities with specific intent, reckless indifference, or gross negligence regarding Fischer's legal right to be free from such practices. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 41.001, .003 (West 1997); *see City of Keller*, 2005 Tex. LEXIS 436, at *34. Tackett testified that she and de la Garza, the general manager, made the ultimate decision to fire Fischer. There is no dispute on appeal regarding whether Tackett, the human resources director, or de la Garza, the general manager, were employed in a managerial capacity.

The state-of-mind requirements necessary to support punitive damages refer to Ancira GMC's awareness that it is or may be *violating the law*, not merely its awareness that it is engaging

16

in acts constituting retaliation or discrimination. *See Kolstad v. American Dental Ass'n*, 527 U.S. 526, 535-36 (1999) (emphasis added) (employer may believe discrimination is lawful if discrimination theory is novel or poorly recognized, or employer believes discrimination satisfies exception to liability). Accordingly, even intentional retaliation or discrimination may not support punitive damages if the actor lacks the required awareness that such conduct is illegal. *Id.* Therefore, under the jury charge in this case, the punitive damages award can be supported by clear and convincing evidence that Ancira GMC managerial employees were grossly negligent with respect to whether their retaliation against Fischer violated that law. This evidence may be either direct or circumstantial. *See Moriel*, 879 S.W.2d at 23.

The record demonstrates that Tackett was aware of at least the general requirements of anti-discrimination law. She testified that Ancira's "zero tolerance policy [against sexual harassment] actually takes the legal protections several steps further." She explained that "the legal guidelines under, for instance, title seven that specifies restrictions against discrimination or sexual harassment and that kind of thing, it's very specific to behaviors, whereas our zero tolerance policy actually extends it broader than that and offers a greater degree of protection for our employees." Moreover, page six of the "Team Ancira Team Manual" explicitly states that "[n]o employee is to be subjected to unsolicited and unwelcome sexual overtures or conduct, either verbal or physical, by any person, *nor subject to retaliation for reporting such conduct*." (Emphasis added). Although the jury found that Fischer was not in fact subjected to sexual harassment, it is undisputed that Fischer filed sexual harassment complaints with the company and the TCHR, and that Tackett conducted an investigation into Fischer's complaints. Less than two months after Fischer filed her

internal complaint, and only eight days after Tackett responded in writing to Fischer's internal complaints, Fischer was fired for alleged unperformed work.

Ancira GMC does not challenge the jury's finding, made the predicate for the punitive damages liability finding, that it retaliated against Fischer. We recognize that evidence of retaliation alone is generally insufficient to support an award of punitive damages; otherwise, punitive damages would be awarded automatically in every retaliation case. *See Continental Coffee Products Co. v. Cazarez*, 937 S.W.2d 444, 454 (Tex. 1996). However, in this case, there is evidence that Tackett, the human resources director for entities employing over 700 people, was knowledgeable regarding company anti-discrimination policies and their relationship with underlying law, and that the Team Ancira policy manual expressly prohibited retaliation against employees. We conclude that this evidence would enable a reasonable juror to infer a firm belief and conviction that Tackett actually was aware of the risk that retaliating against Fischer would violate Fischer's legal rights, yet proceeded with conscious indifference to that risk, and that retaliating objectively involved an extreme degree of risk of violating Fischer's legal rights.[16] We overrule Ancira GMC's second issue.

---

[16] In a post-submission letter, appellants cite *Hoffmann-LaRoche, Inc. v. Zeltwanger*, 144 S.W.3d 438 (Tex. 2004) for the proposition that a punitive damages award cannot be based on the same facts as the finding of discrimination or retaliation. In *Hoffman*, the Supreme Court considered whether a sexual harassment claim and cause of action for intentional infliction of emotional distress could be subject to damages based on the same conduct. 144 S.W.3d at 441. The court noted that "[w]here the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available." *Id.* at 447.

*Hoffman* is distinguishable. In this case, punitive damages are not a separate cause of action distinct from Fischer's retaliation claim, but are additional statutory damages for the same underlying conduct that are awarded based on jury findings regarding Ancira GMC's culpable state of mind. *See* Tex. Lab. Code Ann. § 21.2585; *Rubinstein v. Administrators of the Tulane Educ. Fund*, 218 F.3d 392, 406 (5th Cir. 2000).

**CONCLUSION**

We hold that there is legally and factually sufficient evidence to support the district court's deemed finding that Ancira GMC was an "employer" subject to the TCHRA, but find legally insufficient evidence to support such a finding regarding Ancira Enterprises. We also find legally sufficient evidence to support the punitive damages award against Ancira GMC under the jury charge submitted in this case. We accordingly affirm the judgment of the district court against Ancira GMC, and we reverse and render a take-nothing judgment in favor of Ancira Enterprises.

_____

Bob Pemberton, Justice

Before Justices B. A. Smith, Puryear and Pemberton

Affirmed in Part; Reversed and Rendered in Part

Filed:   June 16, 2005