

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-22-00280-CV

**HARBOR AMERICA CENTRAL, INC.**,
Appellant

v.

Vielka **ARMAND**,
Appellee

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2018-CI-01895
Honorable Norma Gonzales, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:       Rebeca C. Martinez, Chief Justice
               Irene Rios, Justice
.              Liza A. Rodriguez, Justice

Delivered and Filed: March 27, 2024

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED

This permissive appeal involves an issue of first impression on whether chapter 91 of the Texas Labor Code supersedes the application of chapter 21 of the Texas Labor Code. *See* TEX. LAB. CODE ANN. §§ 21.001–.556, §§ 91.001–.062.

A professional employer organization ("PEO") is a business entity that offers professional employer services to a client. *See id.* § 91.001(3) ("Client"), (14) ("Professional employer services"), (15) ("Professional employer organization"). Chapter 91 of the Texas Labor Code provides the powers and duties of PEOs. *See id.* §§ 91.001–.062 Under chapter 91, a co-

employment relationship is created between the PEO and the client through a contractual relationship that outlines the sharing or allocation of employment responsibilities to covered employees under the professional employer services agreement and chapter 91. *See id.* §§ 91.001(3–b), 91.0011, 91.031, 91.032. Chapter 21 of the Texas Labor Code provides employees protection from discriminatory acts and defines an employer to include a person, or its agent, who is engaged in an industry affecting commerce and who has 15 or more employees for each working day for 20 or more calendar weeks. *See id.* §§ 21.001 (explaining the purposes of chapter 21), 21.002(8)(A), (B) (defining "employer").

In this case, appellant Harbor America Central, Inc. ("Harbor"), a PEO, provides professional employer services to its client, Legal Eats, LLC ("Legal Eats"), for its cafeteria personnel. Appellee Vielka Armand worked at the cafeteria. Armand sued Harbor asserting discriminatory acts under chapter 21. Armand filed a motion for partial summary judgment contending as a matter of law that (1) Harbor was Armand's employer as defined by section 21.002(8)(A), and (2) Harbor was Armand's common-law employer. *See id.* § 21.002(8)(A). The trial court granted Armand's motion and permitted Harbor to file a permissive interlocutory appeal on the controlling questions of law. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(d) (providing for a permissive interlocutory appeal when a controlling question of law involves a substantial ground for difference of opinion, and its immediate resolution may materially advance the litigation).

Thus, we must answer the following controlling questions:

1. Whether a PEO licensed under chapter 91, like Harbor, can be an "employer" as defined by chapter 21; and

2. If so, whether (a) Harbor is an "employer," as that term is statutorily defined by chapter 21 and (b) Armand established the existence of an "employment relationship" with Harbor, thereby exposing Harbor to liability for the acts of covered employees?

We answer the first controlling question in the affirmative. The second controlling question contains two subparts more fully explained below: (1) whether Harbor satisfies the statutory definition of employer and (2) whether an employment relationship existed between Harbor and Armand. We hold Armand has established the first subpart, but a fact question exists as to the second subpart. Therefore, we affirm the trial court's partial summary judgment in part and reverse the trial court's partial summary judgment in part. We remand the cause to the trial court for further proceedings consistent with this opinion.

## BACKGROUND

Harbor entered into a professional employer service agreement with Legal Eats, wherein Harbor provided professional employer services for Legal Eats's cafeteria personnel needs. *See* TEX. LAB. CODE ANN. §§ 91.001(3), (14), 91.031. The Client Service Agreement ("the Agreement")[1] set forth the duties and responsibilities of both Harbor and Legal Eats. *See id.* § 91.031.

In July 2016, Armand signed an employment agreement as required by Harbor and began working at Legal Eats. Both Melissa Rose and Larry Perryman also worked at Legal Eats and executed similar employment agreements with Harbor. According to Armand, Rose and Perryman were managers at Legal Eats, and Perryman directly supervised Armand. Armand alleged Perryman subjected her to a hostile work environment by sexually harassing and sexually assaulting her. After reporting Perryman's actions to Rose and the owner of Legal Eats, Armand alleged she was retaliated against, and the retaliation increased after she filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission and the Texas Workforce Commission. Armand was terminated in November 2017.

---

[1] When we refer to the Agreement, we are referring to the original agreement and any addendums.

Armand originally sued Harbor, Legal Eats, and several other defendants alleging numerous claims. However, at the time of the proceedings relevant to this permissive appeal, Armand's lawsuit only involved chapter 21 claims against Harbor.

Armand filed a motion for partial summary judgment. Harbor, a PEO licensed under chapter 91, responded asserting that chapter 91 supersedes chapter 21 and any other law, and thus Harbor cannot be liable for the acts of Rose and Perryman. *Id.* § 21.002(8)(A); §§ 91.001–.062. In granting Armand's motion for partial summary judgment, the trial court ruled that: (1) Harbor was Armand's employer as defined by section 21.002(8)(A), (2) Harbor was Armand's, Rose's, and Perryman's common-law employer,[2] and (3) Harbor's defense that it was not Armand's employer should be struck.

## STANDARD OF REVIEW

In a permissive appeal, we limit our review to the controlling legal question on which there is a substantial ground for disagreement and for which immediate resolution may materially advance the litigation. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(d); TEX. R. APP. P. 28.3(e)(4); TEX. R. CIV. P. 168.

We review the grant of a summary judgment de novo. *BPX Operating Co. v. Strickhausen*, 629 S.W.3d 189, 195 (Tex. 2021). To prevail on a traditional motion for summary judgment, the movant must show that there is no genuine issue of material fact and that it is entitled to judgment

---

[2] As more fully explained below, Armand correctly contends that a complainant filing an action under chapter 21 must show (1) the complained of entity meets the statutory definition of employer under section 21.002(8) of the Texas Labor Code, and (2) "an employment relationship" exists between the parties to subject the entity to potential liability under chapter 21. *See* TEX. LAB. CODE ANN. § 21.002(8); *Univ. of Tex. at El Paso v. Ochoa*, 410 S.W.3d 327, 331 (Tex. App.—El Paso 2013, pet. denied) (citing *De Santiago v. W. Tex. Cmty. Supervision & Corr. Dept.*, 203 S.W.3d 387, 393 (Tex. App.—El Paso 2006, no pet.)); *Thompson v. City of Austin*, 979 S.W.2d 676, 681–82 (Tex. App.—Austin 1998, no pet.). The trial court ruled, however, that Harbor satisfied the statutory definition of employer under chapter 21 but also ruled that Harbor was Armand's, Rose's, and Perryman's common-law employer. For purposes of this appeal, this court will evaluate whether Armand has established Harbor was her employer pursuant to chapter 21 based on the two-prong test. Moreover, for purposes of this appeal, because Rose and Perryman are similarly situated as Armand, our discussion will only concentrate on Armand. Rose and Perryman will not be named separately unless necessary.

as a matter of law. TEX. R. CIV. P. 166a(c); *Strickhausen*, 629 S.W.3d at 196. To the contrary, the evidence raises a genuine issue of material fact, thereby precluding summary judgment, if reasonable and fair-minded jurors could differ in their conclusions in light of all the summary judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). Stated differently, evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 815 (Tex. 2005). We consider the evidence in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Strickhausen*, 629 S.W.3d at 196.

### ANALYSIS

In accordance with the two controlling questions presented to us on appeal, Harbor maintains (1) chapter 91 supersedes chapter 21 and any other law, and therefore Harbor could not be Armand's employer under section 21.002(8)(A), and (2) even if this court determines a PEO can be an employer under chapter 21, under the facts of this case, it was not Armand's employer and thereby subject to the liability from the acts of others working at Legal Eats.

1. *Can a PEO licensed under chapter 91 be an "employer" as defined by chapter 21, or does chapter 91 supersede the application of other statutes, including chapter 21?*

To determine if chapter 91 supersedes the application of other statutes or law outside chapter 91, we must first construe chapter 91.

A. Statutory Construction

"Issues of statutory construction are reviewed de novo." *ExxonMobile Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017). "In construing a statute, our objective is to determine and give effect to the [l]egislature's intent." *Energen Res. Corp. v. Wallace*, 642 S.W.3d 502, 509 (Tex. 2022). The reviewing court may not "judicially amend a statute by adding words that are not contained in the language of the statute." *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 508 (Tex.

2015). Instead, the court should "presume the [l]egislature chose the statute's language with care, purposefully choosing each word, while purposefully omitting words not chosen." *In re CenterPoint Energy Hous. Elec., LLC*, 629 S.W.3d 149, 158–59 (Tex. 2021) (orig. proceeding).

"We recognize a fundamental principle of statutory construction that words' meanings cannot be determined in isolation but must be drawn from the context in which they are used." *Willacy Cnty. Appraisal Dist. v. Sebastian Cotton & Grain, Ltd.*, 555 S.W.3d 29, 39 (Tex. 2018). "In ascertaining legislative intent, we read the entire statute as a whole and do not consider isolated sections, provisions, or terms in a vacuum." *EXLP Leasing, LLC v. Galveston Cent. Appraisal Dist.*, 554 S.W.3d 572, 582 (Tex. 2018). "[W]hen the legislature uses certain language in one part of the statute and different language in another, the [c]ourt assumes different meanings were intended." *Ineos USA, LLC v. Elmgren*, 505 S.W.3d 555, 564 (Tex. 2016) (internal quotation marks omitted). Moreover, the reviewing court may "consider other matters in ascertaining legislative intent, including the objective of the law, its history, and the consequences of a particular construction." *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006); *see also* TEX. GOV'T CODE ANN. § 311.023(1), (3), (5).

Furthermore, we must construe statutes in a way that harmonizes and gives effect to the different provisions when possible. *In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 716 (Tex. 2015) (citing TEX. GOV'T CODE ANN. §§ 311.025, 311.026(a)); *Tex. Indus. Energy Consumers v. CenterPoint Energy Hous. Elec., LLC*, 324 S.W.3d 95, 107 (Tex. 2010). Only when provisions are irreconcilable will we look to the general rules of construction—that later-enacted statutes control or specific provisions prevail over general provisions—to determine which provision applies. *See* TEX. GOV'T CODE ANN. §§ 311.025, 311.026(b); *In re Mem'l Hermann Hosp.*, 464 S.W.3d at 716. We presume the legislature perceives inconsistencies when drafting legislation: absent any indication it desires one chapter or certain statutory provisions to prevail

over others, we must also presume it wants all provisions to be fully effective. *See Tex. Indus. Energy Consumers*, 324 S.W.3d at 107; *see also* TEX. GOV'T CODE ANN. § 311.021.

B.  Chapter 91 Statutory Provisions

Chapter 91 provides the statutory framework for the licensing of PEOs, professional services agreements, and the powers and duties of PEOs. "Professional employer services" includes the "services provided through co[-]employment relationships in which all or a majority of the employees providing services to a 'client' . . . are covered employees." TEX. LABOR CODE ANN. § 91.001(14). A "[c]o[-]employment relationship" exists through contractual relationships between "a client and a [PEO] that involves the sharing of employment responsibilities with or allocation of employment responsibilities to covered employees in accordance with the professional employer services agreement and this chapter." *Id.* § 91.001(3–b). A "[c]overed employee" is "an individual having a co[-]employment relationship with a [PEO] and a client." *Id.* § 91.001(7–a); *see also id.* § 91.0012.

Additionally, subsections 91.032(a) and (b) provide:

(a)  A professional employer services agreement between a [PEO] and a client must provide that the [PEO]:

   (1)  shares, as provided by Subsection (b), with the client the right of direction and control over covered employees;

   . . . .

   (4)  shares, as provided by Subsection (b), with the client the right to hire, fire, discipline, and reassign the covered employees; and

   (5)  shares, as provided by Subsection (b), with the client the right of direction and control over the adoption of employment and safety policies and the management of workers' compensation claims, claim filings, and related procedures.

(b)  Notwithstanding any other provision of this chapter, a client retains sole responsibility for:

> (2) the direction and control of covered employees as necessary to conduct the client's business, discharge any applicable fiduciary duty, or comply with any licensure, regulatory, or statutory requirement;
>
> (3) goods and services produced by the client; and
>
> (4) the acts, errors, and omissions of covered employees committed within the scope of the client's business.

*Id.* § 91.032(a), (b).

Chapter 91 also specifically provides that "[n]otwithstanding any other provision in this chapter, nothing in this chapter preempts the existing statutory or rulemaking authority of any other state agency or entity to regulate professional employer services in a manner consistent with the statutory authority of that state agency or entity." *Id.* § 91.002(c).

C. Chapter 21 Statutory Provisions

Chapter 21 provides employees protection from employment discrimination. *See* TEX. LAB. CODE ANN. § 21.001. The Texas Workforce Commission is the state agency entrusted with the responsibility and authority to protect employees from discriminatory acts. *See id.* § 21.0015. Chapter 21 defines "employer" for purposes of explaining who can be held liable for violating the prohibited discriminatory acts included in chapter 21. An "employer" includes:

> (A) a person who is engaged in an industry affecting commerce and who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year; or
>
> (B) an agent of a person described by Paragraph (A)[.]

TEX. LAB. CODE ANN. § 21.002(8)(A), (B).

D. Application

The provisions in chapter 91 and chapter 21 do not conflict on their face. Neither chapter specifically references the other. Rather, the two chapters govern different subjects and have different purposes. *See Howlett v. Tarrant Cnty.*, 301 S.W.3d 840, 846 (Tex. App.—Fort Worth 2009, pet. denied) (explaining a specific statute does not apply over a more general statute when

the two statutes do not share a common purpose or object). Because these statutes do not conflict, we must construe them in a way that gives both statutes effect and harmonizes the provisions. *See In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 716 (Tex. 2015).

Moreover, chapter 91 expressly rejects application of certain statutes but does not mention chapter 21. Specifically, section 91.008 instructs that section 51.405 of the Texas Occupations Code does not apply to chapter 91. *See* LAB. CODE ANN. § 91.008; *see also* TEX. OCC. CODE ANN. § 51.405. And, while chapter 91 explicitly rejects the extension of a co-employment relationship between PEOs and franchisors, chapter 91 is completely silent as to a PEO's liability as a co-employer under chapter 21. *See* TEX. LAB. CODE ANN. § 91.0013 (excluding co-employment relationships with franchisors).

Similarly, chapter 21 also provides for an explicit exclusion stating that "a franchisor is not considered to be an employer of [] a franchisee; or [] a franchisee's employees," but chapter 21 does not exclude its application to PEOs. *See id.* § 21.022(b). Thus, while the legislature provided some exclusions from the application of chapter 91 and chapter 21, neither chapter expressly excludes PEOs from potential liability under chapter 21.

Nonetheless, Harbor claims section 91.032(b) provides PEOs protection because the statute requires the professional employer services agreement state that the "client retains sole responsibility for . . . the acts, errors, and omissions of covered employees committed within the scope of the client's business." *Id.* § 91.032(b)(3). This subsection identifies contract requirements of a professional employer services agreement between the PEO and the client. *See id.* Applicable to the entire chapter 91, however, section 91.002, entitled "Rules," directs that "[n]otwithstanding any other provision in this chapter, nothing in this chapter preempts the existing statutory or rulemaking authority of any other state agency or entity to regulate professional employer services in a manner consistent with the statutory authority of that state agency or entity." *Id.* § 91.002(c).

Both section 91.002 and section 91.032(b)(3) were enacted at the same time. *See id.* §§ 91.002, 91.032(b)(3); *see also* Act of May 7, 2013, 83rd Leg., R.S., ch. 117, § 4, sec. 91.002, §14, sec. 91.032, § 30.

Given the language in section 91.002(c) and the purpose of chapter 21—to protect all employees from discriminatory acts in a manner directed by the Texas Workforce Commission—section 91.032(b)(3) does not shield Harbor from potential liability under chapter 21. *See id.* §§ 91.002(c), 91.032(b)(3); TEX. LAB. CODE ANN. § 21.001; *Lopez*, 259 S.W.3d at 153; *see also* TEX. GOV'T CODE ANN. § 311.021 (instructing when construing statutes, "it is presumed that . . . public interest is favored over any private interest" and that "a just and reasonable result is intended"). Had the legislature intended chapter 21 to not apply to PEOs under chapter 91, it could have expressly said so by legislating the exclusion.

Therefore, we conclude the provisions of chapter 91 and chapter 21 are not irreconcilable and can be read in harmony and applied together. Furthermore, we disagree chapter 91 shields PEOs from potential liability under chapter 21 for discriminatory acts. We conclude a PEO can be an employer as defined by section 21.002(8). *See* TEX. LAB. CODE ANN. § 21.002(8).

Accordingly, we answer the first controlling question in the affirmative and hold a PEO licensed under chapter 91, like Harbor, can be an employer under chapter 21.

2. *Was Harbor, a licensed PEO, Armand's employer under chapter 21 and thus subject to liability for the acts of its covered employees, Rose and Perryman?*

After concluding chapter 91 does not shield a PEO from being considered an employer under chapter 21, we must now determine whether, under the circumstances of this case—including reviewing the specific terms of the Agreement between Harbor and Legal Eats—Harbor was Armand's employer under chapter 21, and thereby subject to liability for Armand's workplace complaints.

A.  Applicable Law

For Harbor to be potentially liable to Armand under chapter 21 we apply a two-prong test: Harbor must (1) satisfy the statutory definition of employer under section 21.002(8) and (2) have had an employment relationship with Armand. *De Santiago v. W. Tex. Cmty. Supervision & Corr. Dept.*, 203 S.W.3d 387, 393 (Tex. App.—El Paso 2006, no pet.) (setting forth the two-part test in determining whether a defendant is an "employer" under Title VII while (a) considering chapter 21's purpose is to provide for the execution of the policies of Title VII, and (b) applying analogous federal precedent when interpreting chapter 21); *Ancira Enterprises, Inc. v. Fischer*, 178 S.W.3d 82, 88 (Tex. App.—Austin 2005, no pet.); *see also Univ. of Tex. at El Paso v. Ochoa*, 410 S.W.3d 327, 331 (Tex. App.—El Paso 2013, pet. denied).

i.  First Prong: Statutory Definition of "Employer"

Harbor does not dispute the first prong of the test. Harbor acknowledges it is "engaged in an industry affecting commerce" and has "15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year[.]" *See* TEX. LAB. CODE ANN. § 21.002(8)(A). Therefore, we hold Harbor meets the statutory definition of an employer under section 21.002(8)(A) of the Texas Labor Code.

ii.  Second Prong: Employment Relationship

Harbor argues Legal Eats, not Harbor, had the employment relationship with Armand, and therefore Harbor cannot be liable to Armand under chapter 21. To determine whether an employee relationship existed between Harbor and Armand, we apply a hybrid economic realities/common-law control test. *See De Santiago*, 203 S.W.3d at 396. Accordingly, "[w]hen examining the control component, courts focus on whether the alleged employer has the right to hire and fire the employee, the right to supervise the employee, and the right to set the employee's work schedule." *Id.* "The economic realities component focuses on whether the alleged employer paid the

employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment." *Id.* "The right to control an employee's conduct is the more important component of the test." *Ochoa*, 410 S.W.3d at 332; *see also Deal v. State Farm Cnty. Mut. Ins. Co. Tex.*, 5 F.3d 117, 119 (5th Cir. 1993).

B. Relevant Sections from the Agreement Between Harbor and Legal Eats

Although the Agreement is between Harbor and Legal Eats, it delineates Harbor's duties and responsibilities regarding covered employees, such as Armand. Thus, the Agreement sheds light on whether Harbor had an employment relationship with Armand.

The Agreement refers to covered employees as "Staff," and it provides that Harbor and Legal Eats "agree to co-employ certain employees ("Staff") and agree to undertake the employer responsibilities strictly as allocated by this Agreement." *See* TEX. LAB. CODE ANN. § 91.001(7–a). The Agreement continues by stating that Legal Eats shall perform all employer responsibilities with respect to Staff, with the exception of those responsibilities expressly allocated to Harbor. With respect to managing or controlling Legal Eats's business or operations, the Agreement states

> [Harbor] assumes only those responsibilities expressly allocated to [Harbor] under the terms of this Agreement or required of [Harbor] under applicable state law regulating professional employer organization services. In all other respects, [Legal Eats] shall continue to have the exclusive right of control over the operation, management[,] and control of its business and of Staff.

Nonetheless, the Agreement limits Legal Eats's control and direction of Staff by providing that Legal Eats "retains sufficient direction and control over [Staff] as is necessary to conduct [Legal Eats]'s business[.]" Legal Eats, thus, does not retain all control and direction of Staff.

Moreover, with respect to hiring Staff, the Agreement provides that persons will not be considered Staff until the person completes "Harbor['s] employment agreement[,]" and Harbor "approve[s] such new employee." The Agreement also requires Legal Eats to obtain the "specific consent of Harbor" to "add additional Staff, reassign, discipline, or remove Staff; or, modify

positions, benefits, and pay rates for Staff[.]" Noteworthy, the Agreement also provides that any person hired by Legal Eats "but not disclosed to [Harbor] shall not be Staff, and shall be solely employed by [Legal Eats]. [Harbor] shall have no obligation or duty of any kind with respect to such persons."

While the Agreement states Harbor is not responsible for any action taken by Legal Eats regarding its Staff unless Legal Eats "secures prior written authorization from [Harbor's] corporate office," the Agreement contains indemnity provisions wherein Legal Eats must indemnify Harbor for several reasons including (1) "the acts, errors[,] or omissions of Staff;" (2) "the hiring, termination, compensation[,] or discipline of Staff except for actions taken at the sole request of [Harbor];" and (3) "claims by Staff, except for claims directly based upon [Harbor's] failure to perform its duties under this Agreement[.]" Also, according to the Agreement, Harbor maintained an employer practices liability insurance coverage for Legal Eats in the event Staff filed any charges or claims against Legal Eats.

Last and most important, following the 2013 legislative session in which chapter 91 underwent substantial revisions, Harbor and Legal Eats added an addendum to the Agreement to comply with the Act. *See id.* § 91.032(a), (b). The addendum includes the following provisions:

[Harbor] and [Legal Eats]:
1.  share the right of direction and control over Staff,
2.  share the right to hire, fire, discipline[,] and reassign Staff, and
3.  share the right of direction and control over the adoption of employment and safety polices and the management of workers' compensation claims, claim filings, and related procedures.

. . . .

[Legal Eats] retains responsibility for the acts, errors, and omissions of Staff committed within the scope of [Legal Eats]'s business.

C. Application

Since Harbor has conceded it satisfies the first prong of the two-part test—the statutory definition of "employer" as provided by section 21.002(8)(A)—the following discussion addresses whether Harbor had an employment relationship with Armand, thereby subjecting Harbor to potential liability under chapter 21 as her employer.

The Agreement gives Harbor the right to direct and control Legal Eats's cafeteria personnel, including Armand. The Agreement also explicitly gives Harbor the right to hire, fire, discipline, and reassign Armand. As per the Agreement, and according to the record, Armand executed Harbor's employment agreement when she began working, and Harbor approved her employment. Additionally, the Agreement required Harbor's consent to reassign or modify Armand's and other Staff's positions, benefits, and pay rate. Although the Agreement limits Harbor's liability for Staff, it also expressly provides Legal Eats will indemnify Harbor against claims arising out of the acts, errors, or omissions of Staff.

Furthermore, the record indicates Harbor paid Armand, as her paystubs designate Harbor as the payor, and Harbor withheld taxes from her wages. Harbor issued Armand's W-2 form and lists Harbor as her employer. Harbor also offered Armand life insurance benefits. While Harbor acknowledges it paid Armand and withheld taxes from her paycheck, Harbor maintains that no evidence, including the Agreement, demonstrates it set the terms and conditions of Armand's employment.

To the contrary, Harbor claims the Agreement directs that Legal Eats "shall continue to have the exclusive right of control over the operation, management[,] and control of its business and Staff." The Agreement also states Legal Eats "retains sufficient direction and control over these employees as is necessary to conduct [Legal Eats]'s business[.]" Harbor further argues that Legal Eats hired and fired Armand and asserts it did not set Armand's or other personnel's work

schedules; rather, work schedules were set by Legal Eats. To add, Harbor contends it played no part in directly supervising Armand or other personnel working at the cafeteria.

Essentially, Harbor contends it did not have actual control over Armand. The test, however, does not require the alleged employer to have performed the act; rather, to satisfy the control component of the test, the alleged employer must have had the *right* to perform the act, such as hiring and firing. *See De Santiago*, 203 S.W.3d at 396 (explaining that "courts focus on whether the alleged employer has the right to hire and fire the employee").

Harbor additionally provides an extensive list of factors related to the economic realities component of the employment relationship prong and argues nothing in the record indicates a single factor applies to it. The factors Harbor listed, however, are additional factors generally used in determining whether an individual is an employee or an independent contractor and thus are not applicable here. *See Benavides v. Moore*, 848 S.W.2d 190, 193 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied) (discussing additional factors used in determining whether a person is an employee or an independent contractor); *see also Culver v. Gulf Coast Window & Energy Products, Inc.*, No. 01-11-00080-CV, 2012 WL 151464, *4 (Tex. App.—Houston [1st Dist.] Jan. 19, 2012, pet. denied) (using same additional factors discussed in *Benavides* to determine whether an individual was an employee or an independent contractor). Therefore, we are not necessarily persuaded that Armand must have shown evidence supporting these factors.

While Armand provided sufficient evidence to support several factors of the hybrid economic realities/common-law control test, she did not provide conclusive evidence to prove the second prong of the test—establishing the existence of an employment relationship between her and Harbor. *See De Santiago*, 203 S.W.3d at 396. After considering the evidence, we conclude reasonable minds could differ on whether Harbor and Armand had an employment relationship

under the economic realities/common-law control test and therefore, the determination is a fact question for the factfinder. *See City of Keller*, 168 S.W.3d at 815.

After considering the relevant statutes, foregoing authority, the Agreement, and Armand's summary judgment evidence, we conclude Harbor satisfies the statutory definition of employer under section 21.002(8)(A), the first prong of the test. But the evidence fails to conclusively demonstrate as a matter of law the existence of an employment relationship between Harbor and Armand, the second prong of the test. *See Strickhausen*, 629 S.W.3d at 196; *see also* TEX. R. CIV. P. 166a(c).

Accordingly, we affirm the trial court's order granting Armand's partial summary judgment that Harbor satisfies the statutory definition of employer as provided by section 21.002(8)(A). We cannot conclude, however, Armand established as a matter of law she had an employment relationship with Harbor, and therefore we reverse that part of the trial court's order granting Armand's partial summary judgment.[3] We remand the cause for further proceedings.

## CONCLUSION

We answer the first controlling question in the affirmative; a PEO, like Harbor, can be an "employer" as defined by chapter 21. We, however, answer the second question in two parts. For Harbor to be potentially liable to Armand for the acts of other covered employees, Harbor must satisfy the statutory definition of employer under chapter 21, and Armand must establish she had an employment relationship with Harbor. Although the summary judgment evidence affirmatively establishes that Harbor falls within the statutory definition of employer under chapter 21, a fact question exists as to whether Armand had an employment relationship with Harbor.

---

[3] The trial court's judgment adjudicated as a matter of law that Harbor was Armand's, Rose's, and Perryman's common-law employer and struck Harbor's defense that it was not Armand's employer. We further hold that Armand has not established that Harbor had an employment relationship with Rose and Perryman for similar reasons we held Armand did not conclusively establish her employment relationship with Harbor.

Therefore, we affirm the trial court's order granting Armand's partial summary judgment that Harbor's affirmative defense asserting is shielded from liability under chapter 21 as a PEO is stricken, and that Harbor satisfies the definition of employer under section 21.002(8)(A), and we reverse the trial court's partial summary judgment concluding, as a matter of law, that Harbor had an employment relationship with Armand, Rose, and Perryman that subjects Harbor to potential liability under chapter 21. We remand the cause to the trial court for further proceedings consistent with this opinion.

Irene Rios, Justice