Rafael MAGALLANES, Plaintiff,

v.

PENSKE LOGISTICS, LLC and Gruma Corp. d/b/a Mission Foods, Defendants.

No. EP–08–CV–131–PRM.

United States District Court, W.D. Texas, El Paso Division.

July 31, 2008.

John A. Wenke, Attorney at Law, El Paso, TX, for Plaintiff.

Eduardo Flores Cuaderes, Jr., Littler Mendelson, P.C., Dallas, TX, Jeanne C. Collins, Kemp Smith LLP, Robert L. Blumenfeld, Mendel Blumenfeld LLP, El Paso, TX, Franklin Dalton Davis, III, Michael W. Fox, Ogletree Deakins Nash Smoak & Stewart PC, Austin, TX, for Defendants.

### ORDER GRANTING PLAINTIFF'S MOTION TO REMAND

PHILIP R. MARTINEZ, District Judge.

On this day, the Court considered (1) Plaintiff Rafael Magallanes's ("Plaintiff") "Motion to Remand," filed on May 21, 2008; (2) Defendant Gruma Corporation d/b/a Mission Foods's ("Mission") "Response to Plaintiff's Motion to Remand," filed on June 2, 2008; (3) Defendant Penske Logistics, LLC's ("Penske") "Response to Motion to Remand," filed on June 2, 2008; (4) Mission's "Objections to and Motion to Strike Declaration Testimony of Rafael Magallanes," filed on June 2, 2008;[1] (5) Plaintiff's "Reply to Defen-

---

1. Mission moves to strike portions of Plaintiff's Declaration, submitted in support of his Motion to Remand, on the basis that certain portions are inadmissible hearsay, concluso-ry, speculative, and express improper opinion. Mot. to Strike 1. The Court will address Mission's objections as necessary herein. Any unresolved objections are denied as moot.

dants' Responses to Plaintiff's Motion to Remand," filed on June 11, 2008; and (6) Plaintiff's "Response to Defendant's Objections to Declaration of Rafael Magallanes," filed on June 11, 2008, in the above-captioned cause. After due consideration, the Court is of the opinion that Plaintiff's Motion to Remand should be granted for the reasons set forth below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 6, 2008, Plaintiff filed his Original Petition in County Court at Law Number 5 in El Paso County, Texas, against Penske and Mission alleging discrimination and retaliation in violation of the Texas Commission on Human Rights Act ("TCHRA"), TEX. LAB.CODE § 21.001 *et seq.*[2] Orig. Pet. 1.

Plaintiff alleges that he "worked as a truck driver for Mission Foods and Penske for approximately the past six and a half years. The first 3½ years, [he] worked for Mission Foods through Labor Ready temporary services, but was paid by Penske. Since approximately October 2004, [he] worked for Mission Foods as a permanent employee of Penske." Org. Pet. 9. He contends that Mission's employees sexually harassed him, and that both Penske and Mission retaliated against him after learning that he had filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging sexual harassment. *Id.* at ¶¶ 10–11, 16, 18. He states that Penske suspended him, removed him as a driver for Mission, and offered him an unacceptable substitute assignment, which ultimately led to his resignation. *Id.* at 19–21.

Penske timely removed the action to the United States District Court for the West-ern District of Texas on the basis of diversity jurisdiction. Not. of Removal 1. Plaintiff is a citizen of Texas. *Id.* at 2. Penske is a Delaware corporation with its principal place of business in Pennsylvania. *Id.* Mission is a Nevada corporation with its principal place of business in Texas. *Id.* at 3. Thus, diversity of citizenship only exists if the Court disregards Mission's citizenship. Penske contends that Mission's citizenship can be ignored because Mission is improperly joined insofar as "there is no possibility that Plaintiff will be able to establish liability against Mission." *Id.*

Plaintiff argues that Mission is liable for discrimination and retaliation and thus, its citizenship destroys diversity and mandates remand to state court. Mot. to Remand 1. Accordingly, the Court must determine whether Plaintiff improperly joined Mission to defeat removal and diversity jurisdiction.

## II. LEGAL STANDARD

■ A defendant may remove an action from state court to federal court if complete diversity of citizenship exists among the parties and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1332, 1441(a). Removal based on diversity is improper if "any party ... has been improperly or collusively made or joined to invoke the jurisdiction of such court." *Id.* at § 1359. Therefore, where a defendant removes an action based on diversity of citizenship, but a non-diverse defendant is present in the case, the defendant must show that complete diversity exists by demonstrating that the plaintiff improperly joined the non-diverse defendant.

■ A defendant can establish improper joinder by showing either "(1) actual fraud

---

**2.** The TCHRA makes it unlawful for an employer to discriminate against an individual with respect to compensation, or the terms, conditions, or privilege of employment on the basis of sex. TEX. LAB.CODE § 21.051. It also prohibits retaliation by an employer against a person who opposes a discriminatory practice. *Id.* at § 21.055.

in the [plaintiff's] pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir.2003). Because Plaintiff does not allege actual fraud, only the latter method of establishing improper joinder is before the Court.

■ In determining whether Plaintiff is able to establish a cause of action against Mission, the Court must determine whether Penske has demonstrated that "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 574 (5th Cir.2004). The removing party must prove by clear and convincing evidence that the joinder of the in-state party was improper. *Id.* at 573; *Grassi v. Ciba–Geigy, Ltd.*, 894 F.2d 181, 186 (5th Cir.1990). The Court may "pierce the pleadings and consider summary judgment-type evidence in the record, but must also take into account all unchallenged factual allegations . . . in the light most favorable to the plaintiff." *Travis*, 326 F.3d at 649 (internal quotation and citation omitted). "[A]ll disputed questions of fact and all ambiguities in state law must be resolved in favor of the plaintiff." *Gray ex rel. Rudd v. Beverly Enters.-Miss., Inc.*, 390 F.3d 400, 405 (5th Cir.2004).

## III. ANALYSIS

Penske asserts that there is no possibility that Plaintiff can prevail against Mission because Mission did not employ Plaintiff. Not. of Removal 3. Plaintiff argues Mission can be held liable "as a co-employer with Penske and . . . because [of] its control of [Plaintiff's] access to employ-ment opportunities with Penske." Mot. to Remand 6.

■ A defendant is subject to liability under the TCHRA if: (1) an employer-employee relationship exists between the parties, or (2) in the absence of this relationship, the defendant controls access to the plaintiff's employment opportunities with a third party. *Johnson v. Scott Fetzer Co.*, 124 S.W.3d 257, 263–64 (Tex.App.-Fort Worth 2003, pet. denied).

### A. Employer–Employee Relationship

■ To determine whether an employer-employee relationship exists, Texas courts apply a "hybrid economic realities/common law control test." *Id.* at 263. The economic realities component of this inquiry "focuses on whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment." *Id.* The control component focuses on "whether the alleged employer had the right to hire and fire the employee, the right to supervise the employee, and the right to set the employee's work schedule." *Id.*

#### 1. Economic Realities

■ Penske contracted with Mission to provide truck drivers, trucks, and trailers to transport goods produced by Mission to locations throughout the United States by executing a Logistics Agreement (hereinafter, the "Logistics Agreement"). Goodman Decl. ¶¶ 2, 4.[3] Penske hired Plaintiff as a truck driver and assigned him to a trucking assignment with Mission. *Id.* at ¶ 6. It is undisputed that at all relevant times Penske paid Plaintiff's salary, withheld taxes from his paycheck, and provided workers' compensation coverage and auto-

---

**3.** Penske submits the declaration of Scott Goodman, a Penske Human Resources Manager. Penske Resp. Ex. A.

mobile insurance. *Id.* at ¶ 7. It is also undisputed that Mission did not provide Plaintiff with any benefits, financial or otherwise, and "did not consider him an employee for tax purposes." Rodriguez Decl. ¶ 4.[4] Thus, the Court finds that the economic realities in the instant action fail to establish the existence of an employer-employee relationship between Plaintiff and Mission.

### 2. *Control*

 The right to control an employee's conduct is the most important factor in determining whether an employment relationship exists. *Deal v. State Farm County Mut. Ins. Co.,* 5 F.3d 117, 119 (5th Cir.1993).

Plaintiff argues that Mission "had full control over his job duties and work schedule." Mot. to Remand 7. He states that he worked on Mission's premises, and that Mission's employees directed him "with regard to the places and times that [he] needed to deliver [its] products," and provided him with "the tools and equipment to perform his job duties, including pallet jacks and ramps." Pl. Decl. ¶ 3.[5]

 It is undisputed that Mission permitted Plaintiff to access its facilities. Rodriguez Decl. ¶ 3. However, a plaintiff's ability to access the defendant's facilities is insufficient to establish an employer-employee relationship. *See Acosta v. Drury Inns, Inc.,* 400 F.Supp.2d 916, 918–920 (W.D.Tex.2005) (finding plaintiff's performance of work duties on the defendant's premise did not establish an employer-

employee relationship). Therefore, Plaintiff's ability to access Mission's facilities, standing alone, does not give rise to an employer-employee relationship.

 It is also undisputed that Mission instructed Plaintiff regarding the content, time, and place of his deliveries. Mission Resp. 5. Instructing a plaintiff as to what, when, and where to deliver is a red herring in determining whether an employment relationship exists. *See Broussard v. L.H. Bossier, Inc.,* 789 F.2d 1158, 1161 (5th Cir.1986) (finding defendant did not have an employment relationship with the plaintiff truck driver though it directed him as to "what to do and when to do it")[6]; *see also Lalik v. Roadrunner Dawes Freight Sys.,* No. 4:07–CV–152–A, 2008 WL 1868320, *3, 2008 U.S. Dist. LEXIS 33491, *13 (N.D. Tex. April 22, 2008) ("Insofar as plaintiff argues that he was employed by defendant because defendant directed what he would do and when he would do it, he also misses the point."). These instructions are necessary to effectuate the purpose of the Logistics Agreement. *See* Rodriguez Decl. ¶ 3 ("If [Penske's drivers] could not access [Mission]'s property, they could not pick-up or deliver [Mission]'s products."). Hence, any control exercised by Mission in directing Plaintiff is contemplated by the very nature of the Logistics Agreement. *See Mayes v. Kelly Servs., Inc.,* No. 4:03–CV–091–A, 2004 WL 533951, *3, 2004 U.S. Dist. LEXIS 29675, *10 (N.D.Tex. Feb. 11, 2004) (finding the defendant's ability to

---

**4.** Penske submits the declaration of Marco Rodriguez, a Mission Warehouse Manager. Penske Resp. Ex. B.

**5.** Mission objects that Plaintiff's allegations are "conclusory, lacking any specific factual assertions." Mot. to Strike 2. The Court finds Plaintiff's allegations are not conclusory and thus, overrules Mission's objection.

**6.** Though *Broussard* applied Title VII of the Civil Rights Act of 1964, "the law governing claims under the [TCHRA] and Title VII is identical." *Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398, 403–4 n. 2 (5th Cir.1999); *see also Wal–Mart Stores, Inc. v. Canchola,* 121 S.W.3d 735, 739 (Tex.2003) ("The Legislature intended to construe state law with federal law in employment discrimination cases.").

instruct and supervise the plaintiff insufficient to establish an employer-employee relationship where the contract between the defendant and a third party expressly contemplated the guided provision of services. Thus, while Mission exercised some control over "the end to be accomplished," it lacked the requisite degree of control over Plaintiff through its control of "the means and details of the accomplishment." *Schott Glas v. Adame*, 178 S.W.3d 307, 315 (Tex.App.-Houston [14th Dist.] pet. denied) (internal quotation omitted).

■■■■ Plaintiff also argues that Mission exercised sufficient control over Plaintiff by virtue of providing "pallet jacks and ramps." Pl. Decl. ¶ 3.[7] Evidence of control may include "ownership of equipment necessary to perform the job." *Arbaugh v. Y & H Corp.*, 380 F.3d 219, 228 (5th Cir. 2004), *rev'd on other grounds*, 546 U.S. 500, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006). As it is undisputed that Penske supplied the truck and trailer, the Court concludes that Mission's alleged provision of jacks and ramps is merely incidental to the delivery services which Plaintiff performed,[8] and thus, insufficient to demonstrate control.

■■■■ Contrary to Plaintiff's allegations, there is undisputed evidence that only Penske controlled the terms and conditions of Plaintiff's employment. According to Goodman, throughout Plaintiff's assignment to Mission, Plaintiff was supervised by three Penske employees, who all "had the authority to discipline [him], evaluate his performance, ... terminate him ... [and] control[ ] his compensation, duties and assignments, and shift and work schedule." Goodman Decl. ¶ 8.[9] As stated in the Logistics Agreement, Penske had "exclusive control over the manner in which it or its Personnel perform the Service and Penske may engage and can employ such individuals as it deems appropriate in connection with its performance of the Services." Logistics Agreement ¶ 3. Plaintiff presents no evidence and does not make any allegations that Mission could fire, discharge, or demote him, or change the terms or conditions of his employment. Accordingly, the Court finds insufficient evidence that Mission controlled Plaintiff's employment so as to give rise to an employer-employee relationship.

### B. *Rennel* Test for Standing under the TCHRA

Alternatively, Plaintiff submits that absent an employment relationship, Mission can nonetheless be held liable because it controlled access to his employment opportunities with Penske and interfered with that access. Mot. to Remand 7-8 (citing *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144-45 (Tex.1999)).

---

7. The parties dispute whether Mission provided such equipment. *See* Goodman Decl. ¶ 9 ("Penske provided the trucks, trailers, pallet jacks and ramps, and other equipment."). For purposes of the instant inquiry, the Court credits Plaintiff's allegations.

8. Goodman states that "[a]s a driver, ... [Plaintiff] did not use pallet jacks or ramps as a regular part of his job." Goodman Decl. ¶ 9. Moreover, the Logistics Agreement sets forth that Penske supplied the "equipment necessary to perform the Services." Logistics Agreement ¶ 1.5.

9. Plaintiff alleges that his "direct supervisor was Jesse Ramirez, a Mission Foods warehouse manager." Pl. Decl. ¶ 3. While Ramirez may have directed Plaintiff's transportation of Mission's goods, there is no evidence that Ramirez had authority to hire or terminate Plaintiff, or change the terms and conditions of his employment. To the contrary, there is undisputed evidence that the only persons with such authority were Penske employees. Goodman Decl. ¶ 8.

In *Rennels*, the Texas Supreme Court held that a plaintiff has standing to sue under the TCHRA by showing "that the defendant-employer controlled access to the plaintiff's employment opportunities and denied or interfered with that access based on unlawful criteria." *Id.* "The 'control' necessary under an interference theory is not to be confused with, nor is it the same as, the 'right to control' which is necessary to find an employee/employer relationship." *Acot v. New York Med. Coll.*, 153 F.R.D. 517, 521 n. 6 (S.D.N.Y. 1993) (internal quotation and citation omitted).

As evidence that Mission controlled access to and interfered with his employment at Penske, Plaintiff alleges that Mission Foods warehouse manager, Marco Rodriguez, complained to Penske about his job performance.

Penske does not deny that Rodriguez made such complaints. Penske Resp. 2. Rodriguez asserts that he complained to Penske after learning Plaintiff had been found asleep in his delivery truck on two separate occasions. Rodriguez Decl. ¶¶ 5–6. Goodman explains that after hearing Rodriguez's complaints, he removed Plaintiff from the Mission assignment in order to ensure Penske provided reliable services to Mission. *Id.* He further states that Mission "did not ask Penske to terminate its employment relationship with [Plaintiff]." *Id.*[10]

A defendant is in a position to control and interfere with the plaintiff's employment with a third party where the defendant and a third party contractually vest the defendant with "control over certain employment issues," such as conditioning an employment benefit upon the defendant's consent. *Rennels*, 994 S.W.2d at 147.

It is undisputed that Mission exerted some influence on Penske's hiring decisions insofar as Penske acknowledges that it "makes good faith efforts to address Mission's reasonable requests to change personnel." Penske Resp. 2. Thus, it is reasonable to infer that Mission, through its ability to influence Penske's hiring decisions, in fact controls Penske's employment decisions. Based on these allegations and the present state of the record, the Court finds that Plaintiff states a cognizable claim that Mission interfered with Plaintiff's employment opportunities at Penske.[11] Accordingly, the Court concludes that Plaintiff has standing to sue Mission and that Penske has failed to satisfy its burden to show that Mission was fraudulently joined. Because Penske has failed to establish improper joinder, "diversity is not complete, the diverse defendant is not entitled to remove, and remand is mandated." *See Smallwood*, 385 F.3d at 575.

## IV. CONCLUSION

Based on the foregoing legal principles and analysis, the Court concludes that Mission is a properly joined party. Since complete diversity does not exist between

---

10. Plaintiff denies that he was ever found asleep on the job, and asserts that Rodriguez's complaints were motivated by Plaintiff's filing of an EEOC claim. Pl. Decl. ¶¶ 6–7. Viewing the facts in Plaintiff's favor, the Court accepts as true Plaintiff's version of the facts for purposes of the instant inquiry.

11. Though Penske continued to employ Plaintiff after receiving Mission's complaints, Plaintiff does allege actionable conduct insofar as he states that his suspension coupled with Penske's attempt to reassign him to an unpleasant work assignment constituted materially adverse employment actions. Org. Pet. ¶ 21. *See Burlington N. & Sante Fe Ry. v. White*, 548 U.S. 53, 71, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (finding reassignment of job duties actionable when the "particular reassignment is materially adverse").

Plaintiff and all Defendants, removal from the Texas state court was improper, and Plaintiff's Motion to Remand should be granted pursuant to 28 U.S.C. § 1447.

Accordingly, **IT IS ORDERED** that Plaintiff Rafael Magallanes's "Motion to Remand to State Court" (Docket No. 10) is **GRANTED.**

**IT IS FURTHER ORDERED** that the above-captioned cause is **REMANDED** to County Court at Law Number 5 El Paso County, Texas.

**IT IS FURTHER ORDERED** that all pending motions, if any, are **DENIED AS MOOT.**

**IT IS FINALLY ORDERED** that the Clerk of the Court shall **CLOSE** this matter.