

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| THE UNIVERSITY OF TEXAS AT EL PASO, | § | No. 08-12-00115-CV |
| | § | |
| Appellant, | § | Appeal from the |
| | § | |
| v. | § | 171st District Court |
| | § | |
| MAGDALENA OCHOA, | § | of El Paso County, Texas |
| | § | |
| Appellee. | § | (TC#2010-121) |
| | § | |

## **O P I N I O N**

In this accelerated interlocutory appeal, Appellant, The University of Texas at El Paso (UTEP) appeals the trial court's order denying its plea to the jurisdiction. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014 (a)(8) (West 2008). We affirm.

### **FACTUAL AND PROCEDURAL BACKGROUND**

Appellee, Magdalena Ochoa (Ochoa) is a former employee of Human Capital International LLC d/b/a Integrated Human Capital, LLC (IHC), a staff leasing company in El Paso, Texas. UTEP contracted with IHC for the provision of various temporary staffing services on an as-needed basis. Under the contract, IHC would pay the employees it assigned to work at UTEP, and then bill UTEP for the services performed.

On September 15, 2008, pursuant to the contract, IHC assigned Ochoa to provide

temporary custodial services at UTEP's facilities. On or around March 26, 2009, Ochoa reported that Emilio Fernandez, her UTEP supervisor, had sexually harassed her. Ochoa made the report to UTEP personnel, Manuela Rocha and Jeff Johnson. On or about March 28, 2009, UTEP ended Ochoa's work assignment and asked her to report back to IHC. UTEP then called IHC to inform them that Ochoa's assignment had been ended due to poor performance. Ochoa subsequently contacted IHC to report the sexual harassment and that she believed she was being retaliated against for reporting the sexual harassment.

On April 8, 2009, UTEP offered to reinstate Ochoa's work assignment under different supervision and to provide her with backpay. Rather than accept a reassignment at UTEP, Ochoa chose to look for other employment.

On January 13, 2010, Ochoa sued IHC[1] and UTEP alleging that Fernandez subjected her to sexual and verbal harassment and that UTEP engaged in sex discrimination and retaliation in violation of the Texas Commission on Human Rights Act (TCHRA). *See* TEX. LAB. CODE ANN. §§ 21.051, 21.055 (West 2006).[2] In response, UTEP filed a general denial and a plea to the jurisdiction. Later, UTEP filed an amended plea to the jurisdiction, which included a motion for partial summary judgment. In its plea to the jurisdiction, UTEP asserted that IHC was Ochoa's employer, UTEP had no control over Ochoa's relationship with IHC, and that it was immune from Ochoa's suit under the TCHRA. Ochoa responded that UTEP was her employer for purposes of the TCHRA. Alternatively, Ochoa maintained that a direct employment relationship with UTEP

---

[1] IHC was dismissed as a party to the suit and is not a party to this appeal.
[2] Under the TCHRA, it is unlawful for an employer to discriminate against an individual with respect to compensation, or the terms, conditions, or privileges of employment because of race, color, disability, religion, sex, national origin, or age. TEX. LAB. CODE ANN. § 21.051. The TCHRA also prohibits retaliation by an employer against a person who opposes a discriminatory practice. *Id*. at § 21.055. Chapter 21 emulates Title VII of the Federal Civil Rights Act, and sexual harassment is a form of prohibited sex discrimination. *De Santiago v. W. Tex. Cmty. Supervision & Corr. Dep't*, 203 S.W.3d 387, 391 (Tex. App. – El Paso 2006, no pet.).

was not required for her to have standing to file suit under the TCHRA. After a hearing, the trial court denied UTEP's plea to the jurisdiction and motion for partial summary judgment. This appeal followed.[3]

## DISCUSSION

In a single issue on appeal, UTEP contends that the trial court lacked subject matter jurisdiction and erred in denying its plea to the jurisdiction because Ochoa failed to properly invoke the limited waiver of governmental immunity available under the TCHRA.

### *Standard of Review*

A plea to the jurisdiction contests a trial court's subject matter jurisdiction. *City of Dallas v. Carbajal*, 324 S.W.3d 537, 538 (Tex. 2010); *Samaniego v. Keller*, 319 S.W.3d 825, 828 (Tex. App. – El Paso 2010, no pet.). A trial court's ruling on a plea to the jurisdiction is reviewed *de novo*. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *De Santiago*, 203 S.W.3d at 393. The plaintiff has the burden of pleading facts which affirmatively show that the trial court has jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993).

Thus, we first consider the plaintiff's petition to determine whether the facts pleaded affirmatively demonstrate that jurisdiction exists. *State v. Holland*, 221 S.W.3d 639, 642-43 (Tex. 2007), *citing Miranda*, 133 S.W.3d at 226. We construe the pleadings liberally in favor of the pleader, look to the pleader's intent, and accept as true the factual allegations in the pleadings. *Miranda*, 133 S.W.3d at 226, 228. If the pleadings are insufficient to establish jurisdiction but do not affirmatively demonstrate an incurable defect, the plaintiff should be afforded an opportunity to replead. *Holland*, 221 S.W.3d at 643; *Miranda*, 133 S.W.3d at 226-27. However, in some

---

[3] On appeal, UTEP does not challenge the trial court's denial of its motion for partial summary judgment.

instances, a plea to the jurisdiction may require our consideration of evidence pertaining to jurisdictional facts. *Holland*, 221 S.W.3d at 643; *Miranda*, 133 S.W.3d at 227; *Bland Independent School District v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). "A plea should not be granted if a fact issue is presented as to the court's jurisdiction, but if the relevant undisputed evidence negates jurisdiction, then the plea to the jurisdiction must be granted." *Holland*, 221 S.W.3d at 643, *citing Miranda*, 133 S.W.3d at 227-28.

## LIABILITY UNDER THE TCHRA

On appeal, UTEP complains that the trial court erred in denying its plea to the jurisdiction because it is immune from Ochoa's suit under the TCHRA because: (1) UTEP was not Ochoa's employer; and (2) UTEP did not control Ochoa's relationship or access to employment opportunities with IHC.

### Sovereign Immunity

Sovereign immunity deprives a trial court of subject matter jurisdiction for lawsuits against the State or certain governmental units unless the State consents to suit. *Miranda*, 133 S.W.3d at 224. A limited waiver of sovereign immunity exists under the TCHRA when a governmental unit has committed employment discrimination. *See* TEX. LAB. CODE ANN. § 21.254 (West 2006) (providing that after certain administrative requirements have been met, complainant may bring suit); § 21.051 (prohibiting unlawful employment practices by "employer"); § 21.002(8)(D) (defining "employer" to include a county, municipality, state agency, or state instrumentality); *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 513 (Tex. 2012) (noting that the TCHRA provides a limited waiver of sovereign immunity).

### Employer-Employee Relationship

4

One of the purposes of the TCHRA is to provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments. TEX. LAB. CODE ANN. § 21.001(1) (West 2006). Accordingly, courts may look to analogous federal precedent for guidance when interpreting the Act. *See NME Hospitals, Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999); *Miles v. Lee Anderson Co.*, 339 S.W.3d 738, 742 (Tex. App. – Houston [1st Dist.] 2011, no pet.).

In order for an entity to be subject to liability under the TCHRA, a plaintiff must establish that: (1) the entity meets the statutory definition of "employer"; and (2) an employment relationship existed between the parties. *See De Santiago*, 203 S.W.3d at 395-96; *Ancira Enter., Inc. v. Fischer*, 178 S.W.3d 82, 88 (Tex. App. – Austin 2005, no pet.). UTEP does not dispute that the first element is satisfied, but instead argues that no employment relationship existed between UTEP and Ochoa because UTEP contracted with IHC for the provision of temporary staffing services.

We apply a hybrid economic realities/common law control test to determine whether an employment relationship exists between the parties for purposes of the TCHRA. *See De Santiago*, 203 S.W.3d at 395-96; *Johnson v. Scott Fetzer Co.*, 124 S.W.3d 257, 263 (Tex. App. – Fort Worth 2003, pet. denied); *Thompson v. City of Austin*, 979 S.W.2d 676, 681-82 (Tex. App. – Austin 1998, no pet.). The economic realities component considers whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment. *De Santiago*, 203 S.W.3d at 396. The control component focuses on whether the alleged employer has the right to hire, fire, supervise, and set the alleged employee's work schedule. *Id.* The right to control an employee's conduct is the more important component of

5

the test.  *See Deal v. State Farm County Mutual Insurance Company of Texas*, 5 F.3d 117, 119 (5th Cir. 1993) (citing *Fields v. Hallsville Indep. School Dist.*, 906 F.2d 1017, 1019 (5th Cir. 1990), *cert. denied*, 498 U.S. 1026, 111 S.Ct. 676, 112 L.Ed.2d 668 (1991)).

*The Economic Realities Component*

The record before us establishes that UTEP contracted IHC to provide temporary staffing services on an as-needed basis.  IHC hired Ochoa and assigned her to work at UTEP.  It was IHC, and not UTEP, that paid Ochoa's salary, withheld taxes, provided benefits, and set the terms and conditions of Ochoa's employment.  On appeal, Ochoa does not dispute this evidence, nor does she address the economic realities component of the test.  Thus, there is no dispute that the economic realities of Ochoa's relationship with UTEP do not establish that an employment relationship existed between the parties for purposes of the TCHRA.

*The Control Component*

As to the control component, UTEP maintains that based on its contract with IHC, no employment relationship existed between UTEP and Ochoa.  UTEP contends that it could not hire or fire IHC's employees, it was not responsible for providing IHC employees with assignment details, such as the duration of their work assignment or appropriate work attire.  UTEP asserts that it merely placed an order for services with IHC and that it did not coordinate any of the services provided by IHC employees.

Ochoa argues that UTEP controlled and supervised the employees IHC assigned to work at UTEP.  Ochoa refers us to the deposition testimony of Rosa Santana, Latisha Times, Jeff Johnson, and Emilio Fernandez in support of her argument.  Santana, the owner of IHC, explained that once an IHC employee reported to work at UTEP, a UTEP employee or supervisor

6

provided the instruction, direction, and control over the IHC employee. Similarly, Times, IHC's branch manager in 2009, stated that IHC did not have a supervisor located at UTEP's facilities, and that it was a UTEP supervisor who provided the day-to-day supervision of IHC's employees. Johnson, a supervisor in UTEP's custodial department, testified that UTEP's supervisors decided which temp would work in a particular area. Fernandez, one of UTEP's team leaders in the custodial department and Ochoa's alleged harasser, explained that he would meet with the custodial workers on a daily basis to give them their assignments and instructions. Ochoa asserts that this testimony clearly establishes that UTEP was Ochoa's employer under the hybrid economic realities/common law control test. We disagree.

The contract between UTEP and IHC provided that IHC was to maintain a staff of properly trained and experienced personnel. UTEP had the right to request the replacement of an IHC employee who could not perform the required duties. However, UTEP did not have the right to hire and fire IHC employees from their employment with IHC. After UTEP ended Ochoa's assignment, IHC still considered Ochoa to be its employee. At that time, Ochoa was still eligible for other assignments through IHC.[4]

During their work assignment at UTEP, IHC employees had an off-site IHC supervisor who was responsible for checking in with the employees and whom employees could contact if there was a need. Although UTEP supervised and controlled the daily activities of IHC's employees, including Ochoa, while they were assigned to work at UTEP, that supervision and control was part and parcel of the services contract entered into by IHC and UTEP. *See Magallanes v. Penske Logistics, LLC*, 570 F.Supp.2d 907, 912-14 (W.D. Tex. 2008) (finding that

---

[4] IHC attempted to find Ochoa another assignment at UTEP because UTEP was the only client with whom Ochoa could have been placed as IHC did not have much janitorial work with other clients.

an employee hired by Penske and then assigned to provide truck delivery services at another company pursuant to a contract, was an employee of Penske and not the contracting company even though the contracting company exercised several elements of control because the control and direction of the employee was contemplated by the very nature of the parties' agreement); *see also Reith v. TXU Corp.*, No. 4:05CV33, 2006 WL 887413, at *4 (E.D. Tex. Apr. 4, 2006) (finding that plaintiff was the employee of a staffing agency and not of the defendant that contracted with agency); *Mayes v. Kelly Servs., Inc.*, No. 4:03-CV-091-A, 2004 WL 533951, at *3 (N.D. Tex. Feb. 11, 2004), *aff'd*, 108 Fed. Appx. 932, 933 (5th Cir. 2004) (finding that a temporary staffing agency and not the company that contracted with the agency for staffing services, was the plaintiff's employer where agency paid plaintiff's salary, withheld taxes, provided benefits and set certain terms and conditions of employment). Based on the foregoing, we conclude that UTEP did not exercise the requisite control over Ochoa's employment so as to create an employment relationship with Ochoa under the hybrid economic realities/common law control test. *Reith*, 2006 WL 887413, at *4; *Mayes*, 2004 WL 533951, at *3.

## Standing Under Rennels

Next, UTEP argues that Ochoa cannot maintain standing to sue under the TCHRA because she failed to meet the *Rennels* test for standing. In *Rennels*, the Texas Supreme Court held that a direct employment relationship is not a prerequisite under the TCHRA if a plaintiff establishes that: (1) the defendant is an employer within the statutory definition of the Act; (2) some sort of employment relationship existed between the plaintiff and a third party; and (3) the defendant controlled access to the plaintiff's employment opportunities and denied or interfered with that access based on unlawful criteria. *Rennels*, 994 S.W.2d at 147. A defendant is in a position to

control access to a plaintiff's employment with a third party and deny or interfere with that access based on unlawful criteria when the defendant can exert some control over the third party's employment decisions, and a contract gives the defendant control over certain employment issues. *See id.* The control component under the interference theory of the *Rennels* test is not the same as the control factor required to conclude that an employee-employer relationship existed. *See Magallanes*, 570 F.Supp.2d at 915.

UTEP concedes that Ochoa meets the first two elements of the *Rennels* test. However, UTEP maintains that Ochoa cannot satisfy the third element because UTEP did not control access to Ochoa's employment opportunities with IHC. In support of its argument, UTEP relies on *Magallanes* and *Mayes*. We find *Magallanes* and *Mayes* to be distinguishable from the present case. *Magallanes* and *Mayes* complained about the control and interference with the employment opportunities that corresponded to their third-party employer; however, Ochoa also contends that UTEP controlled access to her employment opportunities with UTEP, and that these opportunities with UTEP were denied or interfered with based on unlawful criteria. *See Magallanes*, 570 F.Supp.2d at 914-15; *Mayes*, 2004 WL 533951, at *1-3.

Ochoa points to Johnson's testimony as evidence establishing that UTEP controlled Ochoa's employment opportunities and denied or interfered with that access based on unlawful criteria. Johnson described Ochoa as a "temp" who worked for UTEP. He agreed that often times, the temporary employees became full-time employees, and that they were being evaluated to see how well they performed. If a position was available, the temporary employees who performed well would be offered a full-time position at UTEP.

UTEP asserts that Ochoa's argument is a misapplication of *Rennels*, and that "[i]t is

9

nonsensical to attempt to apply *Rennels* standing where the allegation is essentially that an employer has somehow impaired a plaintiff's ability to obtain direct employment and has thereby interfered with itself." We disagree with UTEP's understanding of the application of the *Rennels* test. As noted in *Rennels*, under *Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338 (D.C. Cir. 1973), the seminal case allowing suit under Title VII in the absence of a direct employment relationship between the plaintiff and the defendant, proper defendants do not have to be actual or potential employers of a complainant, but they must control access to such employment and deny such access based on discriminatory criteria. *See Rennels*, 994 S.W.2d at 145, 147. Moreover, there is nothing in the language of the *Rennels* test requiring that a defendant control access to or interfere with a plaintiff's employment opportunities with the third-party. *See Rennels*, 994 S.W.2d at 147. The language of the test clearly states that the defendant must control access to the plaintiff's employment opportunities and deny or interfere with that access based on unlawful criteria. *See id*. To be sure, the *Rennels* test did not arise out of concern for a defendant's ability to interfere "with itself," but rather out of the recognition and concern for the potential interference of a person's employment relationships or access to employment by those who do not have a direct employment relationship with that person. *See id*. at 146 (noting the Texas Legislature's acknowledgment that someone other than a plaintiff's direct employer may interfere with a person's employment relationships and opportunities).

While UTEP maintains that Ochoa has not identified any evidence in the record to support her argument under *Rennels*, we agree with Ochoa that the evidence establishes a fact issue as to whether UTEP controlled access to her employment opportunities with UTEP and that these opportunities were denied or interfered with based on unlawful criteria. At her deposition, Ochoa

10

testified that she was offered and applied for a permanent position at UTEP.[5]   After Ochoa reported the sexual harassment to Johnson, he discussed Ochoa's sexual harassment allegations with Albert Villalobos and Juan Guerra, UTEP's directors of custodial services.   Guerra then directed Johnson to end Ochoa's assignment at UTEP on the grounds that she was not meeting performance standards.[6]   According to Johnson he never reported that Ochoa was not meeting work performance standards to Villalobos or Guerra.   Johnson did not recall any discussions as to whether Ochoa was being considered for a permanent position and did not know whether she applied for such a position.

Because there is evidence in the record raising a fact issue as to whether UTEP controlled access to Ochoa's employment opportunities and denied or interfered with that access based on unlawful criteria, we conclude that the trial court did not err in denying UTEP's plea to the jurisdiction.   *Holland*, 221 S.W.3d at 643, *citing Miranda*, 133 S.W.3d at 227-28; *Rennels*, 994 S.W.2d at 147.   Issue One is overruled.

## CONCLUSION

We affirm the judgment of the trial court.


GUADALUPE RIVERA, Justice

July 10, 2013

Before Rivera, J., Barajas, C.J. (Senior Judge), and Larsen, J. (Senior Judge)
Barajas, C.J. (Senior Judge), sitting by assignment
Larsen, J. (Senior Judge), sitting by assignment

---

[5] Ochoa stated that at the time she applied for a permanent position with UTEP, she had already been subjected to Fernandez' sexual harassment, but explained that she was no longer working under his supervision.   She further explained that she submitted an application because UTEP offered good benefits.
[6] According to Guerra's deposition testimony, his decision to send Ochoa back to IHC was based on incorrect and incomplete information as well as his understanding of the university's policy at that time.