# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-40489
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

January 16, 2018

Lyle W. Cayce
Clerk

JUAN PEQUEÑO,

      Plaintiff - Appellant

v.

THE UNIVERSITY OF TEXAS AT BROWNSVILLE; JULIET GARCIA, President, University of Texas at Brownsville; ALAN F. J. ARTIBISE, Provost, University of Texas at Brownsville; ETHEL CANTU, Vice President Academic Affairs, University of Texas at Brownsville; SELMA YZNAGA, Advising Director, University of Texas at Brownsville; TEXAS SOUTHMOST COLLEGE; LILY F. TERCERO, President, Texas Southmost College,

      Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:14-CV-93

Before KING, ELROD, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:*

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-40489

Juan Pequeño appeals the district court's threshold and summary judgment orders disposing of his employment discrimination claims.[1] Pequeño alleges that the University of Texas at Brownsville (UTB), Texas Southmost College (TSC), and several administrators terminated his employment because of his age and retaliated against him by declining to reemploy him.[2] On each claim, the district court either granted a defense motion to dismiss or for summary judgment. We affirm.

## I.

From 2004 to 2013, Pequeño worked as an "Academic Advisor" at UTB's Academic Advising Center. He alleges, however, that he was employed both by UTB (a state university) and TSC (a junior college) because the two schools had partnered. In 2013, after UTB and TSC decided to end their partnership, UTB reduced its workforce. In deciding which positions to eliminate, UTB's advising director set a cutoff based on performance evaluation scores from the past three years. Pequeño's average performance scores fell below that cutoff. So on April 2, 2013, UTB sent a letter informing him that his position would be eliminated that August. The problem, Pequeño alleges, is that the cutoff was above the true mean for all academic advisors and thus targeted older advisors. According to Pequeño, the university retained or rehired younger and less qualified advisors.

---

[1] Pequeno proceeds pro se on appeal. He also filed his initial complaint pro se, but later retained counsel and filed four amended complaints.

[2] Effective August 31, 2015, the Texas Legislature abolished UTB and created in its place the University of Texas Rio Grande Valley. *See, e.g.*, Tex. Sess. Law Serv. 1849–1854 (West); *Edionwe v. Bailey*, 860 F.3d 287, 290 (5th Cir. 2017). This new entity acquired UTB's assets and liabilities. Consistent with the district court and parties, and for convenience, we refer to UTB throughout this opinion.

No. 17-40489

The advisors whom UTB retained were reclassified as "Academic Advising Specialists." Though UTB announced openings for new "Specialist" positions after Pequeño's termination, Pequeño did not apply for those posts. Rather, between June 2013 and February 2014, he unsuccessfully applied for several other UTB and TSC positions, including jobs with campus police or a judicial affairs office. His last application to TSC was denied on December 15, 2013.

On January 20, 2014, Pequeño filed an age discrimination charge against TSC with the Equal Employment Opportunity Commission (EEOC) and the Texas Workforce Commission. On February 1, 2014, Pequeño filed an EEOC charge of age discrimination against UTB. None of these charges raised retaliation, though Pequeño did note in an EEOC intake questionnaire that his supervisor had "retaliated against [him] for filing [a] grievance for . . . treat[ing] [him] different[ly] from other advisors." His administrative complaints were unsuccessful. Pequeño then filed suit in federal court. Later, on September 10, 2014, Pequeño filed another EEOC charge against both UTB and TSC, this time explicitly alleging that the schools retaliated against him for complaining about age-based animus.

Pequeño's original, pro se complaint leveled claims against UTB, TSC, and several administrators. That complaint alleged age discrimination in violation of the Age Discrimination in Employment Act (ADEA)[3] and the Texas Commission on Human Rights Act (TCHRA).[4] He later retained counsel and filed several amended complaints, eventually adding a 42 U.S.C. § 1983 claim for age discrimination in violation of the Equal Protection Clause and retaliation claims under the TCHRA and Title VII.[5]

---

[3] 29 U.S.C. § 621 *et seq.*

[4] Tex. Lab. Code § 21.101 *et seq.*

[5] 42 U.S.C. § 2000e *et seq.*

3

No. 17-40489

The district court dismissed the § 1983 claim as preempted by the ADEA.[6] The court also dismissed the ADEA and TCHRA claims against UTB as barred by sovereign immunity. At summary judgment, the district court held that the remaining age discrimination claims against TSC failed because TSC was not Pequeño's employer, that the TCHRA retaliation claim was time-barred, and that the Title VII claim failed because that statute does not address age discrimination.[7]

## II.

We give a de novo look to sovereign-immunity questions. *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002). So, too, for a grant of summary judgment. *Windham v. Harris Cty.*, 875 F.3d 229, 234 (5th Cir. 2017). "The Eleventh Amendment bars an individual from suing a state in federal court unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity." *Perez*, 307 F.3d at 326 (citing U.S. Const. amend. XI). Summary judgment is proper only if the movant shows that "there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.

Pequeño first argues that UTB should not get sovereign immunity from his ADEA and TCHRA claims.[8] We disagree. The ADEA does not validly abrogate Eleventh Amendment sovereign immunity, *Kimel v. Fla. Bd. of Regents*,

---

[6] Pequeño does not challenge this ruling.

[7] Pequeño does not argue that the district court erred in dismissing his claims against the defendant-administrators. He has therefore abandoned those claims, *see Goodman v. Harris Cty.*, 571 F.3d 388, 399 (5th Cir. 2009), even though he is proceeding pro se, *see Coleman v. Lincoln Par. Det. Ctr.*, 858 F.3d 307, 309 n.9 (5th Cir. 2017) (citing *Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993)).

[8] UTB is an arm of the state entitled to Eleventh Amendment immunity. *See* Tex. Const. art. VII, § 10; Tex. Educ. Code §§ 61.003, 65.01(b); *State of Tex. By & Through Bd. of Regents of Univ. of Tex. Sys. v. Walker*, 142 F.3d 813, 820 n.10 (5th Cir. 1998); *see also Univ.*

No. 17-40489

528 U.S. 62, 91 (2000), and Texas has not unequivocally waived its immunity here, *Sullivan v. Univ. of Tex. Health Sci. Ctr. at Houston Dental Branch*, 217 F. App'x 391, 395 (5th Cir. 2007). And although the TCHRA waives Texas's immunity from suits in *state* court, it does not do so in *federal* court. *See Perez*, 307 F.3d at 332; *see also Pennhurst State Sch. & Hosp. v. Haldermann*, 465 U.S. 89, 120 (1984).

Nor are we persuaded by Pequeño's argument that UTB's partnership with TSC created a "single entity" that waived UTB's immunity. "[T]he State," the Texas Supreme Court has said, "does not waive immunity from suit simply by contracting with a private person. Legislative consent to sue is still necessary." *Gen. Servs. Com'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex. 2001) (citation omitted). Indeed, Texas law permits higher education institutions to enter coordination agreements with junior colleges to improve the continuity, quality, and efficiency of educational programs and services within a region that they serve. *E.g.*, Tex. Educ. Code § 51.662. Contrary to Pequeño's position, these coordination agreements do not fuse two entities into one. *See, e.g., id.* ("The agreements shall in no way abrogate the powers and duties of the boards with regard to the governance of their respective institutions."). Because Texas did not "unequivocally express[]" its waiver of Eleventh Amendment immunity in federal court, *Perez*, 307 F.3d at 332, the district court did not err.

The district court also properly granted TSC summary judgment on Pequeño's claims of age discrimination under the ADEA and TCHRA. The federal statute prevents an "employer" from, among other things, "discharg[ing]" an individual who is at least 40 years old "because of [that] individual's age."

---

*of Tex. Med. Branch at Galveston v. Greenhouse*, 889 S.W.2d 427, 431 (Tex. App.—Houston [1st Dist.] 1994, writ denied).

29 U.S.C. §§ 623(a)(1), 631(a). The state law analogue prohibits similar misconduct by an "employer." Tex. Lab. Code § 21.051. Pequeño alleges that TSC discharged him because he was over 40 years old. But we agree with the district court that these claims fail because TSC was not Pequeño's "employer."

We identify an employer for ADEA and TCHRA purposes using the "hybrid economic realities / common law control test." *Deal v. State Farm Cty. Mut. Ins. Co. of Tex.*, 5 F.3d 117, 118–19 (5th Cir. 1993) (ADEA); *Univ. of Tex. at El Paso v. Ochoa*, 410 S.W.3d 327, 331 (Tex. App.—El Paso 2013, pet. denied) (TCHRA). This test's "most important component" is finding who had the "right to control" Pequeño's conduct. *Deal*, 5 F.3d at 119; *Ochoa*, 41 S.W.3d at 332. Things like hiring, firing, supervising, or setting work schedules indicate control. *Deal*, 5 F.3d at 119; *Ochoa*, 41 S.W.3d at 332. On the "economic realities" side, we focus on who paid the employee's salary, provided benefits, withheld taxes, and set the terms and conditions of employment. *Deal*, 5 F.3d at 119; *Ochoa*, 41 S.W.3d at 331–32.

Filtered through this test, the undisputed facts confirm that UTB, not TSC, was Pequeño's employer under both statutes. UTB was in control. The partnership agreement states that UTB, not TSC, was responsible for employing faculty, staff, and employees. UTB hired and fired Pequeño. His termination letter, penned on UTB letterhead by a UTB administrator never employed by TSC, informed Pequeño that he could appeal through UTB's internal processes. (And appeal Pequeño did—through UTB.) The economics show the same thing. UTB, not TSC, paid Pequeño's wages, provided his benefits, and withheld taxes. Indeed, Pequeño's W-2 forms identified UTB, not TSC, as his employer. We therefore affirm summary judgment on the age discrimination claims against TSC.

The same result obtains for Pequeño's TCHRA retaliation claim against TSC. That claim is time-barred. To be sure, § 21.051 of the Texas Labor Code

prohibits retaliation against those who "file[] a charge [or] complaint" under the TCHRA. But the statute imposes a limitations period, requiring claimants to file an administrative complaint no later than 180 days after the alleged retaliatory act. *See* § 21.202(a); *see also Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 514 (Tex. 2012) ("[S]ection 21.202's administrative filing requirement is a mandatory statutory requirement that must be complied with before filing suit . . . ."); *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996) ("This time limit is mandatory and jurisdictional."). Pequeño missed his deadline. The last alleged instance of TSC's retaliating occurred on December 15, 2013, but Pequeño did not file a retaliation charge until September 10, 2014.

Like the district court, we disagree with Pequeño's contention that his retaliation claim "relates back" to his original charge of age discrimination (filed on January 20, 2014), or that he satisfied the statutory pre-filing requirement based on his answers to an administrative intake questionnaire. First, the relation-back argument fails because his retaliation claim presented an entirely new theory based on different facts. *See Lavigne v. Cajun Deep Founds., L.L.C.*, 654 F. App'x 640, 648 (5th Cir. 2016); *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 878 (5th Cir. 2003). Second, even assuming a federal, EEOC intake form is sufficient to satisfy Texas's filing requirement, there is no evidence that TSC ever received that form or timely notice of the retaliation claim. *Cf. Clark v. Coats & Clark, Inc.*, 865 F.2d 1237, 1239–41 (11th Cir. 1989) (noting in the ADEA context, after affording "great deference" to the EEOC's interpretation of that statute, that a plaintiff may satisfy the federal filing deadline with a timely intake questionnaire that permits the agency to submit a timely notice of the charges to the defendant). In fact, the intake form here referenced conduct by a UTB employee, not a TSC worker. The TCHRA retaliation claim is time-barred.

No. 17-40489

Pequeño's final argument—that he engaged in protected activity under Title VII by complaining of age discrimination—also fails. Under Title VII, a prima facie claim of retaliation comprises three elements: (1) protected activity, (2) an adverse employment action, and (3) causation. *See Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945 (5th Cir. 2015); *see also* 42 U.S.C. § 2000e-3(a). But Title VII—unlike the ADEA—does not address age discrimination. *Compare* § 2000e-2(a) (Title VII), *with* 29 U.S.C. 623(a) (ADEA).[9] The district court appropriately granted summary judgment on the Title VII claim.

We AFFIRM the district court's judgment.

---

[9] Of course, sovereign immunity would have barred an ADEA-retaliation claim in federal court against UTB. *See Kimel*, 528 U.S. at 91; *Sullivan*, 217 F. App'x at 395.